ALEXANDER MUELY V. THE STATE.

*No. 3357. Decided January 30, 1892. On the motion for rehearing decided June 22, 1892.*

1. **Murder—Charge of the Court.**—Upon the second trial of the accused for murder, his first trial having resulted in his acquittal of murder of the first degree, it was objected that the charge of the court was erroneous, in that it instructed upon murder of the first degree and express malice. But *held,* that even if under the circumstances of the case the charge in this respect was improper, the error was fully cured by the express instruction in the charge that the accused had been acquitted of murder in the first degree, and the further fact that the charge applied the law solely to murder of the second degree as it might be evidenced by the facts adduced on the trial.

2. **Same—Perfect and Imperfect Self-Defense** were issues properly raised by the evidence on the trial; wherefore the trial court properly submitted those issues to the jury. See Muely v. The State, 26 Texas Ct App., 274.

3. **Same.—When the Fatal Difficulty was Provoked by the Defendant,** Special Instructions are properly refused when the general charge is specific and sufficient on the issue to which it is addressed. Having sufficiently charged the jury with reference to the law applicable to a homicide committed in a difficulty provoked by the defendant, the court properly refused the requested instruction upon that phase of the case.

4. **Same—Defendant as a Witness in His Own Behalf—Credibility of Testimony.**—The defendant having testified as a witness in his own behalf, his counsel requested a special instruction upon his status as follows: "Under the law a defendant has the right to testify in his own defense. The jury are the exclusive judges of the credibility of his testimony, and the weight to be given to it. As a witness the defendant is to be judged as other witnesses are judged, viz., by their appearance, demeanor on the stand, and the facts and circumstances surrounding them." This requested instruction was given with the court's addition of the following: "Given with the additional statement that in determining the credibility of the defendant who testifies in his own behalf, his interest in the issue involved is to be considered." To this addition to the requested instruction the defense excepted. But *held,* had the charge as given been a part of the general charge, given on motion of the court, it would have been obnoxious to the objection that it singled out and instructed the jury as to the evidence of a particular witness, but being the mere addition of a correct principle of law to an instruction requested by the defense, thereby perfecting

and completing an otherwise insufficient charge, the action of the trial court in the premises was not error.

5. **Murder of the Second Degree—Fact Case.—**See the statements of the case in this and a former appeal (26 Texas Court of Appeals, 274), for evidence held sufficient to support a conviction for murder of the second degree.

ON MOTION FOR REHEARING.

6. **Defendant as a Witness in His Own Behalf—Special Instruction—Modification of.—**Reviewing authorities on motion for rehearing, the court holds that in making the addenda to the requested instruction, to the effect that in passing upon the credibility of the defendant as a witness in his own behalf the jury is authorized to consider his interest in the issue involved, is material error, as an instruction upon the weight of evidence, and as singling out a particular witness upon whose credibility to instruct the jury. See the opinion of Brown, Special Judge, on the motion for rehearing, for a discussion of the question.

APPEAL from the District Court of Travis, on change of venue from Webb. Tried below before Hon. W. M. KEY.

This is a second appeal by the appellant from conviction in second degree for the murder of H. Douglas, in Webb County, Texas, on the 29th day of March, 1886. The penalty awarded on this last trial was a term of five years in the penitentiary.

Inasmuch as this conviction is predicated upon substantially the same evidence, delivered by the same witnesses who testified on the former trial, the facts are not repeated in this report, and only the additional testimony of the defendant, as a witness in his own behalf, is set out. For a full statement of the case, reference is made to the report of the former trial. 26 Texas Ct. App., 274.

The testimony of the defendant, as a witness in his own behalf, as set out correctly and with substantial completeness in the brief of his counsel, is as follows:

I am the defendant in this case. I had never seen Douglas, the deceased, prior to about 12 o'clock on the night of the shooting. It was about 12 o'clock when he came into the bar room, where Burbank and I were playing pin pool.

I do not remember Douglas leaving the bar room, after he first came in, prior to the shooting. I got into Laredo on the evening of the 28th of March, 1886, from Monterey. I went to the Commercial Hotel and put up for the night. Mr. Christian, who was the clerk, told me that he had no room, but that I could take a cot and sleep in the hallway. Rheinhardt was standing near and heard Christian, I suppose, and said that if I did not object, that I could put my cot in his room, which was done.

Burbank and I began to play pin pool in the saloon for money. Rheinhardt was keeping the account for us, at the request of both of us. We played on until about 4 o'clock in the morning, when I found that Burbank was playing with two balls, instead of one. The last game we

played was for $50. At that time I owed Burbank, on a previous game, $60; the last game, which was for $50, Burbank won. I found that he was cheating me, by having two balls, instead of one, when I told him that I had enough and wanted to quit, at which time Douglas said, "Burbank, see that you get your money," and Burbank replied, "Yes, I want my money." We all then went out into the saloon, I walking behind the counter and began washing my hands, as I was through, and looking up for a towel to wipe my hands, I saw Burbank receiving a pistol across the counter. I supposed that the barkeeper had given it to him. Burbank took it and put it down in his pants, in front of him, and Douglas remarked, "Burbank, see that you will get your money." Burbank said, "Yes, I want my money before he leaves the house." I then spoke to Rheinhardt, and told him to please go up into my room and get my valise.

Rheinhardt replied, "All right," and started out. I waited for awhile, saw Rheinhardt come to the door, with the valise. I stepped to the door, took a valise key out of my pocket, opened it, took out my six shooter in my right hand and a check in my left hand. I then turned, walked past where Douglas was standing, up to Burbank, and said, "Burbank, you have twice demanded that money of me before I left the house, now how do you want it?" Douglas then dropped his hand from the counter, in behind his coat, and said, "You will see damned quick." I then turned from Burbank to Douglas, covered him with my pistol, tapped him on the lapel of his coat with the fingers of my left hand, and said, "This is something that does not concern you. Throw up your hands."

He paid no attention to it, and gave a jerk and pull at something in his hip pocket. I then said, "Throw up your hands, or I will cut you down." He made no reply, but made another jerk, as if he was trying to get something out of his pocket, which I thought was a pistol. I then shot, and Douglas fell.

I then covered Burbank with my pistol, and told him he had a gun on him and I wanted it. He said he was a deputy. I told him that, "I don't care what you are. Stand up here, or I will shoot your head off." He straightened up, and I pulled his pistol out of his pants waistband in front. I pointed towards the door, and told him to go fast out of the door. I went around, got my coat out from behind the counter, and went out the back way and up into the hotel, went into the room and locked the door. Shortly after this some one rapped at the door. I asked who it was, and Rheinhardt answered, "Chicago." I then unlocked the door; he came in, and I told him to go down and get the marshal, that I wished to surrender to him; that I killed a man in self-defense, and for him to bring the marshal up. When I went to the door and got the pistol, I got it because I simply wished to use it in my own protection in the event Burbank tried to impose on me and force me to pay the money. I saw him arm himself, and did not know what he might attempt to do at

that time.  I do not know whether Douglas was armed or not.  I expected to give Burbank a check on Corpus in payment of what I owed him, but as he had twice demanded the money of me before I left the room, I did not know what he might do or try to do.  I thought that he might do me violence unless I would pay the money, and he would refuse to take the check.  I did not know Douglas; had no animosity towards him.  Never saw him before 12 o'clock on the night of the killing. I shot him, because I felt that unless I did he would kill me, at the time of the shot.  I thought that he and Burbank were acting together and intended to do me harm.

*G. R. Scott, J. O. Nicholson, W. Showalter*, and *Walton, Hill & Walton*, for appellant.—On the state of the case, as made by the evidence, and its own instruction to the jury that the defendant had been acquitted of murder of the first degree, the court, in its chief charge, repeatedly referred to and defined murder in the first degree, express malice, etc., questions that were not in the case, therefore extraneous to the issue to be passed on by the jury, and to that end injurious to defendant:

1.  In distracting the minds of jurors from the true and only issues in the case.

2.  In indirectly, but forcibly, reminding the jury that murder in the first degree had been an issue in the case, and familiarizing them with that fact.  It all had effect, and hurt defendant.

The court further charged on the degrees in self-defense, viz., full and imperfect right of self-defense.  This was error in this case, because—

1.  No evidence to support the charge.

2.  Abstract law.

This part of the charge is based on the testimony of Burbank, viz., that defendant received his pistol at the door, came forward, passed to the west of Douglas and Burbank, turned, and said, "Throw up your hands," and fired, killing Douglas.

Such a charge is only applicable when defendant has provoked a difficulty with the intent to take life, etc.  What is provocation?  Webster says:  "An act provoking or causing vexation or anger.  That which provokes or excites anger.  The cause of resentment."

In other words, to provoke, in the sense used in the law, is to do an act toward another which impels that other to resent it—to become aggressive—and to endanger the provoker, so that he, the provoker, may act as if in the defensive.  This is not the case here, from any standpoint from which the testimony can be viewed:

1.  There was no provocation, but a killing.

2.  On this line of testimony Douglas did nothing, but was slaughtered.

3.  From this testimony defendant took advantage of no aggressive act on part of Douglas, after being provoked, to kill him in apparent self-

defense, but cold-bloodedly, without excuse, and deliberately shot him down.

These facts do not bring defendant under nor subject him to the law of imperfect right of self-defense, but remits him to the gallows as a murderer.

What office, then, did this charge perform:

1. It put a third issue into the case.

2. It withdrew the attention of the jury from the two issues made by the testimony, viz.:

a. Murder.

b. Self-defense.

The verdict of the jury can be traced to this charge—it can be made to fit into it. The verdict can be made to harmonize with no other part of the charge. The killing was not and could not be murder in the second degree, as charged by the court. There were no facts in evidence to bring it within that degree—purely as murder in the second degree. There were none of the elements of implied malice from which to deduce the second degree of murder, but, when the charge interlarded imperfect right of self-defense and authorized the jury to find murder, but not murder of the first degree, the door was opened for the verdict returned, and the jury made prompt use of the privilege.

The charge ought to be limited to the case on trial. So the court has repeatedly said—and nothing wiser or more perfectly just has ever been said by the court. This great principle, for it is principle, not practice, should not be irregularly applied, but every defendant alike have the benefit of it. There are but two conclusions to be reached from the testimony of Burbank, and that is murder in the first degree. The other, from the testimony of defendant, which makes a clear case of pure and simple self-defense. How, in the presence of this fact, the court found a place to insert the abstract law about provocation, etc., we are unable to see ourselves, or to comprehend when an attempted explanation is made.

The same criticism is applicable to the part of the charge embraced in bill 12. In this charge it is said  *  *  *  if  *  *  *  defendant, with a deadly weapon, provoked a difficulty with Douglas, with intent to kill him, and that in pursuance, etc., did kill him, then, "no matter how great might have been the danger or apparent danger to his own person, etc., find defendant guilty of 'murder in the second degree.'" Here is a shadowing of what is meant by provocation, viz.: To do an act or say words which arouse passion, and through that passion cause acts hostile to the provoker, dangerous to his life, etc. But in this case there was no such provocation. It seems to us that it is plain, that to justify such a charge as that under discussion, four facts must be shown:

1. That defendant do acts toward deceased that are calculated to pro-

voke him, and are done with an intent to raise a difficulty, and to take advantage of such difficulty to kill, etc.

2. That the acts did provoke, and influenced deceased to hostile action toward defendant.

3. That the life, etc., of deceased became apparently in danger.

4. That defendant, carrying out his original intention, killed, etc.

The facts of this case in no way present the proposition submitted. The State says defendant exclaimed, "Throw up your hands," and fired. No difficulty was raised. The statute says, if defendant "provoked a contest." Crim. Code, art. 603. Was there a contest? What is a contest? Earnest struggle for superiority; defense; strife in arms; to strive earnestly to maintain; to struggle; to contend; to defend, etc.—Webster. Was there aught of struggle, contest, defense, shown by the State? It can not be truly so said, and it must be truthfully so said, before the charge can be upheld. Take testimony of the defense, and we have the unquestioned absence of any provocation. We have the struggle, the contest, the preparation for combat, but no provocation. In order to uphold the charge, we are compelled to dismember the testimony on both sides, and then put it together to make it fit the charge instead of making the charge fit the evidence.

*Burbank:* Defendant walked past us, turned, and said, "Throw up your hands and defend yourself."

*Defendant:* Douglas began to pull at what I believed to be a pistol. I warned him to desist, but he would not.

*Burbank:* Defendant shot and killed Douglas.

Thus we would have what the law means when it says "provoked a contest," viz., provocation, an act aroused by the provocation apparently dangerous in character, and deadly action in reply to the demonstration to resent insult or provocation. But what court would permit such a dismemberment of testimony and its reconstruction into so grotesque a shape, as must be done to justify and uphold the charge of the court. Civilization will take a long step backward when such a travesty on law, justice, and right is erected into a principle of criminal jurisprudence.

In order to ameliorate the severity of the passages in the charge in chief, last noticed, defendant asked instruction as embraced in bill 5, to the effect that if defendant did provoke a difficulty, but not with the intention during its continuance to kill deceased, etc., then the killing would not be murder, but a lower grade of offense, if any. This was refused. The court had in its charge to an extent presented the law asked, but we claim it had not been fully and understandingly so done, and that the instruction as asked was not only the law of the case on the point, but also presented it fairly. That this was the law of the case is too well settled to be questioned. Willson's Crim. Law, sec. 1024.

The intention resting in the mind of the slayer at the time of giving the provocation is the test of the degree of crime committed in the act of homicide; that intention is to be deduced by the jury from the facts. This deduction can not be legitimately drawn and handled by the jury unless the law of the point be given by the court.

So far as shown by the State, there was no more reason why defendant should have slain Douglas than that he should have slain the writer. There was no reason why he should have provoked Douglas, to raise an opportunity to slay him under the guise of self-defense. It is simply impossible for any reasonable mind, in equilibrium, to take hold of and retain the proposition that the killing occurred in the way and manner and under the circumstances sworn to by Burbank.

The charge saved by bill 7 we believe admirably presented the law on the state of fact recited therein, and that state of fact clearly springs out of the testimony, viewed from the defendant's standpoint. The court partially presented that view of the law, but it was not clearly and forcibly presented as it was defendant's legal right to have it presented.

It is hardly to be believed that the court will hesitate to declare that there is fatal error in the point we now present, embraced in bill 2.

The defendant had testified for himself, and as usual in such cases, counsel for the prosecution in argument presented doubt as to the truth and reliability of his version of the facts surrounding the homicide.

The court had charged of its own motion thus: "The jury are the exclusive judges of the facts proved, the credibility of the witnesses, and the weight to be given to the testimony." There the court could have perhaps rested the question, and refused to instruct further on the subject of witnesses. But defendant, in view of the discussion which had been had, because of his personal interest in the verdict, and to draw the attention of the jury to the true rule by which the credibility of a witness is to be judged, and how his testimony is to be weighed, requested the following special instruction:

"Under the law, the defendant in a criminal case has a right to testify in his own defense. The jury are the exclusive judges of the credibility of his testimony and the weight to be given to it. As a witness, the defendant is to be judged as other witnesses are judged and weighed, viz., by their appearance, demeanor on the stand, and the facts and circumstances surrounding them."

This instruction was proper, fair, and full, and it would have been eminently just in law and to defendant, in the situation he was standing, and the peril menacing him, for it to have been given, but we will not say that it would necessarily have been reversible error to have refused to submit it to the jury, but we think it would have been error in this case to have so refused; but the not giving it, as drawn, is not the special

hurt of which we complain. The court, over objection of defendant, added to said instruction the following words: "Given with the additional statement, that in determining the credibility of a defendant who testifies in his own behalf, his interest in the issues involved is to be considered."

The objections to this addition are manifold:

1. It was on the weight of evidence.

2. It directed the jury how to consider.

3. It called in special view to the attention of the jury as to how to view, how to consider, credit, and weigh the witness.

4. It is argument by the court, giving a reason to doubt the truth of defendant's testimony.

5. It forcibly added the judgment, opinion, and belief of the court, that special interest, to which direct attention was called by the court, should have, and ought to have, peculiar and special weight with the jury in considering the credibility of defendant and weighing his testimony.

6. It was calculated to impress the jury with the opinion of the court that defendant's interest, direct and personal, in the result of the case, should warn the jury to receive defendant's testimony with caution and even doubt.

7. It singled out one witness—pointed the judicial finger at him; put a burden on him borne by no other witness; arrayed against him an added disqualification to tell the truth, not applied to other witnesses.

8. It left Burbank, the main witness for the State, erect, honorable, truthful, creditable, while it turned the judicial frown fully in the face of defendant.

If this test had been applied to all of the witnesses, particularly to Burbank, the weight of the blow would not have been so heavy; but as it was, it absolutely crushed defendant in presence of the jury, and, as stated, left Burbank erect, and in effect applauded, and that, too, when he had almost as great and moving causes to testify falsely as the defendant himself had. The facts show that Burbank did not stand in any enviable light, because—

1. He was violating the law just before the homicide and at the time of it.

2. Violating Sunday law.

3. Violating gambling law.

4. Violating personal liberty law.

5. Violating law of moral honesty, viz., cheating.

It is probable, if not certain, that he was actuated in his testimony by hate, malice, and revenge, having been humiliated by defendant, by personal shame, and by what he deemed personal outrage by defendant to-

ward him, in disarming and driving him from the house at the moment of the killing.

Still defendant was selected for special burden and discredited, in the presence of the jury, by the highest and most potent authority known to them. Thomp. on Trials, secs. 2285, 2286, 2349, 2350; Rice's case, 3 Texas Ct. App., 455; Code Crim. Proc., arts. 677, 678; Willson's Crim. Stats., secs. 2339, 2340, 2353, 2354.

The court should have granted a new trial on some, if not all, the grounds set out therefor.

### ON MOTION FOR REHEARING.

In addition to appellant's brief filed herein on January 18, 1892, by leave of the court, appellant files this, his additional or amended brief, to same under the fifth assignment of errors, which assignment is as follows: "The court erred in declining to give to the jury the following special instructions asked by the defendant, viz.: 'Under the law, a defendant in a criminal case has a right to testify in his own defense. The jury are the exclusive judges of the credibility of his testimony and the weight to be given to it. As a witness, the defendant is to be judged as other witnesses are judged and weighed, viz., by their appearance, demeanor, and manner on the stand, and the facts and circumstances surrounding them;' because the same was drawn by counsel and tendered to the court, and asked to be given to the jury, covered the full law of the case on the subject matter, and which had not been and was sufficently covered by the charge in chief of the court, and in this immediate connection. The court further erred in modifying and adding an additional statement to said instruction in these words, 'Given with the additional statement, that in determining the credibility of a defendant who testifies in his own behalf, his interest in the issue involved is to be considered;' because and for all the reasons set out in the bill reserving the point; and further, (1) it was on the weight of evidence; (2) it directed the jury how to consider; (3) it called the especial attention of the jury as to how to view, consider, credit, and weigh the witness; (4) it is an argument by the court as a reason to doubt the truth of defendant's testimony; (5) it truly and forcibly added the judgment, opinion, and belief of the court, that special interest (to which direct attention was called by the court) should have and ought to have peculiar and special weight with the jury in considering the credibility of a witness and the weight to be given to his testimony; (6) it was calculated to impress the jury with the opinion of the court that defendant's interest, direct and personal, in the result of the case should caution the jury to receive defendant's testimony with caution and even doubt."

1. It is the duty of the court to deliver a written charge, in which he

shall distinctly set forth the law applicable to the case, and he shall not express any opinion as to the weight of evidence.

2. The court may instruct the jury that they may take into consideration the interest of witnesses in the issues involved, but he must apply it to all of the witnesses who have testified in the case, and can not apply it to a single witness, or to a particular class of witnesses; it must be general, or is error.

The district attorney, in presenting this case to the jury in the lower court, used his best efforts to destroy the force and weight of the defendant's testimony with the jury, by urging upon them that the defendant was unworthy of belief, because of his supreme interest in the issues involved. When defendant asked the court, by written charge, to instruct the jury, as follows: "Under the law, a defendant in a criminal case has a right to testify in his own behalf. The jury are the exclusive judges of the credibility of his testimony, and the weight to be given to it. As a witness, the defendant is to be judged as other witnesses are judged and weighed, viz., by their appearance, demeanor, and manner on the stand, and the facts surrounding them."

This charge the court refused to give as it was presented, but modified it as follows: "Given with the additional statement, that in determining the credibility of a defendant who testifies in his own behalf, his interest in the issues involved is to be considered." And with the charge so modified he gave it to the jury; to which action of the court the defendant promptly excepted, for all of the reasons set out in his bill of exceptions No. 2. Code Crim. Proc., arts. 594, 595, 677, 678; Brown v. The State, 2 Texas Ct. App., 115; Johnson v. The State, 1 Texas Ct. App., 612; Rice v. The State, 3 Texas Ct. App., 454; 7 Texas Ct. App., 177.

By a close inspection of the record in this case, that on the part of the State all of the material facts were narrowed down to the testimony of the witness H. A. Burbank. The testimony of the State's witness Antonio Ayala had been neutralized by the testimony of the defendant's witness W. Showalter, so that it became very material as to whether the jury would believe the testimony of the witness Burbank or that of the defendant. On the part of the defendant, we contended that the testimony of Burbank could not be believed: 1. Because his version of the killing was unreasonable and unnatural, in that he placed the defendant behind the deceased, with his pistol in his hand, from which point he could have shot deceased and would have taken no chances of being shot himself; which, if he had so done, would have been no worse than what witness says he did do, viz., walk around in front of deceased and halloo, "Throw up your hands," and at once shot and killed deceased; thereby killing a man with whom he had had no difficulty, against whom he could have had no grudge, had spoken but few words to, and that, too, in a friendly way, and who was a comparative stranger to him, and whom he

had only met but a few hours before. Yet he left Burbank standing there, against whom he had a grudge, if any one; Burbank being, too, at the time armed with a pistol, sticking in his pants within easy reach, and of the two was in a much more favorable place to do defendant harm, and defendant made no effort whatever to kill him or otherwise harm him, but simply took his pistol from him and made him leave the saloon.

2. Because the witness Burbank had an interest and feeling in seeing the defendant punished. His manhood had been impeached, his pistol had been taken from him, and he driven from the house. Revenge to him, under the circumstances, was sweet, if in no other way than by making the record in this case as black as he could against the defendant.

3. Because he is contradicted by every other witness who testified in the case, either on the part of the State or the defendant, with reference to the movement of the hand on the part of Douglas, the deceased. Antonio Ayala, the only other State's witness on this point, told the witness Showalter deceased was killed because of a movement of the hand. Reinhardt, Morris, and defendant all testify as to such movement.

4. Said witness further shows by his own testimony, that although he was a sworn officer in the United States government, he on the occasion of the killing was violating the arms law of this State by carrying a pistol, and also violating the Sunday and gambling laws by playing pool on Sunday for money.

The State contended that defendant's testimony could not be believed because of his interest in the issues involved. With affairs in this condition before the jury, the defendant requested the charge above set out, when the court modified the charge as above stated, thus joining his forces with the State, and in effect telling the jury that the State was correct and the defendant wrong as to the rules that should govern them in weighing the testimony, not only of the defendant himself, but of the other witnesses in the case. Could language more potent than that used by the court in his modification of that charge have been used to crush the testimony of the defendant and build up that of Burbank? Could he in more forcible terms have expressed to the jury his opinion of the weight to be given to the defendant's testimony? And could there be a case so clearly illustrating the correctness of the propositions above stated, which is but the repetition of the statute and the previous enunciations of this court on the question, than this case?

Should it be contended that defendant waived his right to be considered by the jury as other witnesses because he requested the giving of the charge, then there is no right, either constitutional or statutory, guaranteed to a defendant when on trial for his life or his liberty but what could be swept away and waived by him, simply by his asking that he be given what he is entitled to.

We submit that the defendant in this case was entitled to a fair and

impartial trial under the laws of this State, which we are satisfied he has not had, hence we confidently ask that this case be reversed.

*R. H. Harrison*, Assistant Attorney-General, and *R. L. Henry*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—The only questions raised on appeal in this case are objections urged to supposed defects in the charge of the court as given to the jury. It is objected that the charge defined "murder in the first degree" and "express malice," when this issue was not in the case, appellant having been previously acquitted of murder in the first degree. If any error was committed in this direction—which we do not concede—it was fully cured by the court expressly stating to the jury that the defendant had been acquitted of murder in the first degree, and in applying the law solely to murder in the second degree, as it might be evidenced by the facts adduced on the trial.

The court did not err in instructing the jury as to the law of perfect as well as imperfect self-defense. In our opinion the evidence called for such a charge. Meuly v. The State, 26 Texas Ct. App., 274. And the same may be said with regard to the charge relative to the defendant's provoking the difficulty. Having given the law fully in reference to this latter phase of the case, it was no error to refuse to give in charge defendant's requested instruction.

Defendant testified in his own behalf on the trial. His counsel asked of the court a special requested instruction, as follows: "Under the law, a defendant in a criminal case has the right to testify in his own defense. The jury are the exclusive judges of the credibility of his testimony, and the weight to be given to it. As a witness, the defendant is to be judged as other witnesses are judged and weighed, viz., by their appearance, demeanor on the stand, and the facts and circumstances surrounding them." This instruction was given by the court, with the following words added thereto by the judge: "Given with the additional statement, that in determining the credibility of the defendant, who testifies in his own behalf, his interest in the issues involved is to be considered."

It is urged that the court erred in making this addition to the special instruction as asked by defendant. Had the court of its own motion given the special instruction, without being requested to do so, we, perhaps, would have held that the instruction was erroneous, because it is error to single out and instruct upon the evidence of any particular witness in a case; but the defendant's counsel requested the instruction, and in making the additional statement the court did not render the instruction subject to the objection that he was singling out a particular witness in the case, and consequently such objection is not tenable. What the court added to the special instruction was clearly the law, and, if he intended

giving the special instruction at all enunciatory of the principles of law pertaining to the subject, then his addition to it only tended to make it more complete and clear to the jury, by informing them what their whole duty would be in determining the credibility of the defendant's testimony. Under the circumstances presented, we do not believe that the supposed error in adding to the special instruction is maintainable.

We have given this case our mature consideration, in the light of the able brief filed by counsel for appellant, and our conclusion is that the charge of the court is a full, fair, complete, and ample presentation of the law upon all the legitimate issues raised by the evidence in the case. We have been unable to find any error of omission or commission in the conduct of the trial of this case, which in our opinion would warrant a reversal of the judgment, and it is therefore affirmed.

Hurt, J., concurs.    Davidson, J., enters disqualification, and did not sit in this case.

[After the above opinion was delivered, White, Presiding Judge, having resigned, Simkins, J., was appointed; and he and Presiding Judge Hurt having disagreed on the motion for new trial, Hon. L. H. Brown was appointed Special Judge in the case.—REPORTER.]

### ON MOTION FOR REHEARING.

BROWN, SPECIAL JUDGE.—The above case was submitted to the court at the last Galveston Term, and it was upon the hearing affirmed; whereupon a motion for rehearing was filed, but for want of time it was not considered by the court, and was by proper order transferred to the Austin branch of this court, and said motion is now before us for hearing. The defendant, in support of his motion for rehearing, urges but a single ground, which is, that his special instruction asked in the court below should have been given, without the addition thereto, which was made by the court of its own motion, as a qualification of said requested instruction; the charge asked being as follows, to-wit:   "Under the law, a defendant in a criminal case has the right to testify in his own defense.   The jury are the exclusive judges of the credibility of his testimony and the weight to be given to it.   As a witness, the defendant is to be adjudged as other witnesses are judged and weighed, viz., by their appearance, demeanor on the stand, and the facts and circumstances surrounding them."   And the addition thereto made by the court, being as follows, to-wit:   "Given with the additional statement, that in determining the credibility of a defendant who testifies in his own behalf, his interest in the issue involved is to be considered."   It appears from the record of the case that the making of said addition as a qualification of said requested instruction,

and the giving of said instruction, with the qualification, to the jury by the court, was promptly excepted to by the defendant at the time it was given.

It is also made to appear that in the argument before the jury, counsel for defendant had admitted that the jury might, in determining the credibility of the defendant as a witness, consider his interest in the result of the prosecution. This is made to appear by an indorsement made by the judge on the bill of exceptions taken by defendant to the court's action in reference to the requested instruction; and it might be important were it not for the fact that the timely exception of the defendant makes it necessary for us to determine, not whether the action of the court in the matter complained of operated to defendant's prejudice, but whether or not it was legal error. If the court had of its own motion given the charge requested by defendant, and the addition made to said charge by the court, it would, in our opinion, have been objectionable upon the ground that it would have been singling out a witness from those testifying in the case, and calling special attention to his testimony; and it would have been a charge upon the weight of his testimony, and consequently a charge upon the weight of the testimony in the case. The law in this State is, that the jury are the exclusive judges of the weight of the testimony and credibility of the witnesses, and no interference by the court with the prerogative of the jury in these respects can be allowed. There are some exceptions to the rule thus broadly laid down, made by statute; for instance, where a homicide is shown by the evidence, and no other fact is shown in connection with it, the law implies that it was malicious, and the court should so instruct the jury. But in cases where, by law, an artificial importance is given certain facts, the court instructs the jury upon the weight of such evidence, not because it may be in consonance with enlightened reason and experience, but because there is a plain statute requiring the court to do so.

To further illustrate the exception to the rule as laid down, the court is by statute required to instruct the jury as to the credibility of certain character of witnesses, as for instance accomplices; and when these classes of witnesses appear in a case, the court must instruct the jury upon their credibility, and for the reason that the statute requires it to be done. Outside these statutory exceptions, the rule as stated has stood intact, and has been most jealously guarded by this court. As to the credibility of all classes of witnesses other than those to whom an artificial credibility is fixed by statute, and as to the weight of every species of evidence except such as by law is given a special weight, the jury are to be the judges, and the exclusive judges, and the court should not by its charge, to any extent, even the slightest, interfere with their prerogative. The statute of this State, which invests the accused in a criminal case with the right to testify in his own behalf, places him in precisely the same attitude

with reference to the case as other witnesses are placed. It simply makes him a witness, and adds nothing more, except it is left to his option to testify or not. And therefore the weight to be given to his evidence and his credibility as a witness are matters to be determined by the jury alone, as in the case of other witnesses testifying in the cause. If it be error for the court by a charge to single out any other witness in the case, and call the jury's attention to the evidence, and to intimate to the jury an opinion as to the weight of the evidence of such witness, then it is also error for the court by a charge to single out the defendant, who has testified in his own case, and call the jury's attention to his evidence, and intimate an opinion to the jury as to its weight. A contrary doctrine is held by the courts in some of the other States of the Union, but it will be found on examination that in all, or nearly all, of them the decisions were made under statutes materially different from the statute of this State on the subject.

It could not have been intended by the law making power in this State that the court should by its charge furnish to the jury tests by which to judge the credibility of the witnesses testifying before them. In the first place, in the very nature of things the court could not well do this. The field is so wide in which the circumstances are to be gathered on which the jury are to base their opinion, that the court could not conveniently cover it in a charge. Besides, our system of jury trials proceeds on the theory that jurors are men of intelligence, and that the rules of reason and common observation are known to them, which will enable them to determine the credibility of the witnesses, and the weight to be given to their testimony, and that in reference to these matters they need no instructions from the court, unless the law has given a certain weight to some fact before them, or given to it a particular bearing affecting the credibility of some witness testifying before them. But, in the second place, the Legislature by a positive statute has prohibited the court from charging upon the weight of the testimony. This inhibition clearly, to our minds, prohibits the court from singling out a witness, and instructing the jury as to any tests they are to apply in determining his credibility.

For illustration, let us suppose the judge should instruct the jury as to the test of interest. Does he not thereby intimate to them that the circumstance of the interest of the witness in the result of the prosecution, in the opinion of the court, affects his credibility, else why mention that circumstance as a test? It is, in substance, we think, saying to the jury: The witness is interested in the issues involved, and it is the opinion of the court that that fact affects his credibility as a witness, and, by reason of it, his testimony is more or less weakened. A similar charge in all respects to the instruction asked in this case, taken with the addition thereto made by the court, was declared by our Supreme Court to be a charge upon the weight of evidence. The charge is found in the case of *Willis v. Whit-*

sitt, 67 Texas, 677, and is as follows:  " In determining the credibility of the witnesses, and the weight you should give their evidence, you are authorized to consider the interest which such witnesses have in the matter in controversy, and their demeanor and manner of testifying upon the stand."   Referring to this charge, Chief Justice Willie, delivering the opinion in the case, said:   "This court has reversed a judgment because a charge similar to the above was given to the jury.   Dwyer v. Bassett, 63 Texas, 277.   The appellee was the only witness examined who had any real interest in the suit.   By giving the charge, the court would have said, in effect, that the jury should take into consideration the appellant's interest in determining whether or not they should believe his testimony. Such a charge is virtually upon the weight of evidence, tending to make the jury believe that, in the opinion of the judge, the testimony of a particular witness is not entitled to much weight in making up their verdict.   Such a charge is inconsistent with the freedom allowed to the jury in passing upon the weight of testimony and the credibility of the witnesses."

In the case of Brown v. The State, decided by this court, and reported in 2 Texas Court of Appeals, 115, there are views expressed, as to the proper construction of the charge, in some respects similar to the charge we are considering, which are not in harmony with the views of our Supreme Court, as stated above.   But it is to be observed the charge in that case singled out no particular witness, and the objection to the charge made by the defendant was upon another ground, and not upon the ground that it was a charge upon the weight of evidence.

This court, in the opinion delivered in this case at the last Galveston Term, in effect held, that if the requested instruction, with its qualifications, had been given by the court of its own motion, it would have been error—such error as would have required a reversal of this case.   A reexamination of that proposition has more fully convinced us of its soundness, and we hold that said requested instruction, with the addition made thereto by the court, as a qualification thereof, is a charge invading the province of the jury; intimating, as it does, the opinion of the court as to the credibility of the defendant as a witness in his own behalf, and being a charge, to some extent, on the weight of his testimony; and should said charge have been given by the court of its own motion it would have been error fatal to the judgment.

This court, in that opinion, recognizing the well established doctrine that when a defendant asks an improper instruction, and it is given by the court, he will not be heard to complain, extended the said doctrine, so as to allow the court, of its own motion, to add to said requested instruction other improper matter, being kindred to that contained in the requested instruction, and held that as to this additional charge the defendant was also estopped to complain; and on this view of the case the

judgment was affirmed. Upon carefully reconsidering the question, we have concluded that we were in error upon that point, and that the estoppel should operate against the defendant only to the extent of the instruction asked by him. For the court, of its own motion, to add to the requested instruction of the defendant another charge, in itself also illegal, and add it over defendant's objection, and give it in charge to the jury over his objection, and to hold that in such a case the doctrine of estoppel could be invoked to bind him to abide by it, we now think, after more mature deliberation, is an unwarranted extension of the doctrine of estoppel. This conclusion reached by us leaves the charge of the court, given as a qualification of the requested instruction of the defendant, to stand by itself, and in view of what has been said in this opinion, it can not stand, and necessitates a reversal of this case. The motion for a rehearing is granted, the judgment rendered at the last Galveston Term is set aside, and the cause is reversed and remanded.

*Reversed and remanded.*

Hurt, P. J., concurs. Simkins, J., dissents. Davidson, J., disqualified.