NO.
12-05-00359-CR

 

IN THE COURT OF APPEALS

                                

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

REBECCA ANN LEE,         §          APPEAL FROM THE 159TH

APPELLANT

 

V.        §          JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §          ANGELINA COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM
OPINION

            Rebecca
Ann Lee appeals her conviction for murder. 
In seven issues, she argues that her trial counsel was ineffective, the
evidence was insufficient to sustain her conviction, and the trial court erred
in not giving jury instructions she requested. 
We affirm.

 

Background

            Rebecca Lee and her husband, Johnny,
lived together with Rebecca’s two daughters. 
Johnny had been to prison several times and supported the family by
manufacturing methamphetamine and selling it. 
Appellant used drugs with her daughters and, according to at least one
witness, engaged in sexual acts with her husband and her daughter Candice.

            On May 9, 2003, Johnny and Rebecca
killed Candice by injecting her with a large quantity of methamphetamine.  According to the medical examiner, Candice, a
slight fifteen year old girl, had enough amphetamine and methamphetamine in her
system to kill four 150 pound men.  She
also had a minor wound to her arm where the drugs were injected and finger
shaped marks near the injection point that were consistent with her arm being
held forcibly.  She also had numerous
scrapes, cuts, and bruises, although none of them were life threatening
injuries.  








            Elton Reece is a drug user, and he testified
that he went to the Lee home early in the morning on May 9, 2003 to buy
methamphetamine.  He heard fighting or
commotion in a back bedroom, and then saw Candice run out of the bedroom and
out of the house.  Johnny and Appellant
chased her, and Candice tried to hide under a truck.  Johnny pulled her from under the truck and
took her back to the back bedroom.  After
a short time, Johnny emerged and told Elton that he thought Candice was
dead.  Appellant emerged and said that
she told Johnny it was “too much,” and Johnny responded, “I didn’t mean to.”

            Hours later, Appellant called the
police and reported that Johnny had found Candice under a truck outside the
home, that they had brought her inside, and that Candice was dead.  At trial, two of Appellant’s acquaintances
testified that Appellant had admitted injecting Candice with methamphetamine
the night she died, and one witness said Appellant showed her the puncture mark
on Candice’s arm at her funeral service. 
The funeral service was conducted before the autopsy and before the
cause of death was known to law enforcement. 
Appellant’s defense at trial was that she went to sleep the evening of
May 8, 2003 and awoke to find her daughter dead.  The jury disbelieved her, found her guilty as
charged, and assessed punishment at imprisonment for life.  This appeal followed.

Ineffective Assistance of Counsel

            In her first and seventh issues,
Appellant asserts that she received ineffective assistance of counsel.  Specifically, she complains that her attorney
should have sought to sever her trial from Johnny’s and that her attorney did
not properly investigate her background or present mitigating evidence at her
punishment hearing.  

Applicable
Law

            Claims of ineffective assistance of
counsel are evaluated under the two step analysis articulated in Strickland
v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674
(1984).  The first step requires the
appellant to demonstrate that trial counsel’s representation fell below an
objective standard of reasonableness under prevailing professional norms.  See Strickland, 466
U.S. at 688, 104 S. Ct. at 2065; McFarland v. State, 928 S.W.2d
482, 500 (Tex. Crim. App. 1996).  An
ineffective assistance of counsel claim is not reviewed for isolated or
incidental deviations from professional norms, but on the basis of the totality
of the representation.  See Strickland,
466 U.S. at 695, 104 S. Ct. at 2069.

            The second step requires the
appellant to show prejudice from the deficient performance of his
attorney.  See Hernandez v.
State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).  To establish prejudice, an appellant must
show that there is a reasonable probability that the result of the proceeding
would have been different but for counsel’s deficient performance.  See Strickland, 466 U.S.
at 694, 104 S. Ct. at 2068.  

            We begin with the strong
presumption that counsel’s conduct falls with the wide range of reasonable
professional assistance.  See Jackson
v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  As part of this presumption, we presume
counsel’s actions and decisions were reasonable and were motivated by sound
trial strategy.  See id.  Appellant has the burden of proving both
prongs of an ineffective assistance of counsel claim.  See id.

            Generally, we review a
trial court’s denial of a motion for new trial under an abuse of discretion
standard.  See Holden v. State,
201 S.W.3d 761, 763 (Tex. Crim. App. 
2006) (citing Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim.
App. 1995)).  We review the ultimate
question of prejudice de novo, but the trial court’s decision is afforded
deference on any underlying factual determinations.  Johnson v. State, 169 S.W.3d
223, 239 (Tex. Crim. App. 2005).  When no
express fact findings are made by the trial court, as is the case with rulings
on motions for new trial,[1] we may “impute implicit factual
findings that support the trial judge’s ultimate ruling on that motion when
such implicit factual findings are both reasonable and supported in the record.”  Charles v. State, 146 S.W.3d
204, 213 (Tex. Crim. App. 2004).

Analysis

            Appellant first
argues that her attorney should have sought to sever her trial from Johnny’s
trial.  Article 36.09 of the Texas Code
of Criminal Procedure provides that a court is to sever the trial of two
codefendants if there is prejudice to one of them from the joinder or if there
is a “previous admissible conviction against one defendant.”  Tex.
Code Crim. Proc. Ann. art. 36.09 (Vernon 2006); see also Qualley
v. State, 206 S.W.3d 624, 636 (Tex. Crim. App. 2006).  In her brief, Appellant argues that she was
prejudiced because Johnny had four prior felony convictions and because there
was a “concern” that one of the codefendants would say something implicating
the other party.  At oral argument,
Appellant also argued that she had a right to severance, irrespective of
prejudice, because of Johnny’s prior felony convictions.  

            Appellant’s attorney
testified at a hearing on a motion for new trial that it was Appellant’s
decision not to seek to sever the trial and that it was his strategy to leave
the two cases together because he felt the comparison to Johnny favored
Appellant, in part because she had no prior convictions.  The decision not to seek severance, even if
the trial court would have been obligated to grant the motion, is a purely
tactical decision.  See Woods
v. State, 998 S.W.2d 633, 635 (Tex. App.–Houston [1st Dist.] 1999, pet.
ref’d).  In Woods, the
court of appeals used as an example a defendant who might find it “advantageous
to be tried along with a co–defendant with a criminal record because the
contrast in culpability or involvement between the two defendants favors a
strategy of allowing the jury to focus on the co–defendant, rather than the
alternative of being tried alone.”  Id.
at 636.  Counsel perceived himself to be
in just such a situation.  Because of the
physical evidence, the jury was likely to believe that at least two people
worked together to kill Candice, and the likely conclusion would be that it was
some combination of Elton Reece, Johnny, and Appellant who were responsible for
Candice’s death.  Appellant had no
criminal record and her attorney thought it advantageous for her to be tried
along with Johnny, who had been convicted of several felonies.  This was a reasonable course of action.  Their defenses were not mutually antagonistic;
both testified that they were asleep when Candice was killed.  Neither implicated the other in their
respective testimonies or in their statements to the authorities.   

            With respect to the
deficient performance part of our analysis, our inquiry of trial counsel’s
strategic decisions is made without the benefit of hindsight.  Robertson v. State, 187 S.W.3d
475, 483 (Tex. Crim. App. 2006).  Even
with the benefit of hindsight, Appellant can point to no prejudice she suffered
other than the surmise that her life sentence had something to do with her
being on trial with her husband and one statement made by her attorney in
summation that is subject to different interpretations and does not indicate
that she was prejudiced.[2]

            Appellant presented this
claim at the hearing on her motion for new trial.  The trial court denied the motion for new
trial.  Appellant does not claim that she
wished for her trial to be severed from Johnny’s and that her attorney refused
to do so.  If the trial court believed
that Appellant agreed not to seek a severance, as her attorney testified, that
would support the trial court’s ruling irrespective of prejudice.  Even if Appellant delegated the decision to
her attorney, counsel’s decision not to seek severance in light of the
circumstances presented was a reasonable one, his strategic decision was within
the broad range of objectively reasonable representation, and Appellant has
shown no prejudice.

            Appellant’s second
argument is that counsel did not provide effective representation because he
failed to present evidence during the punishment phase of the trial and he did
not do a reasonably thorough investigation of the case that could have been
presented during the punishment phase of the trial. 

            Appellant’s counsel
testified that it was his intention to put Appellant on the stand during the
punishment phase.  He also testified that
he changed his mind because she was becoming angry with the prosecutor and he
was apprehensive about what would happen if she testified.  The relevant testimony is as follows:

 

                        [District Attorney]:              Had
there been any discussion between the two of you about calling her in the punishment
phase of the trial?

 

[Counsel]:                             We
had planned on her testifying at the punishment phase.  Or I had planned, and we had discussed it.

 

                [District
Attorney]:              And what happened?

 

[Counsel]:                             Rebecca
[Appellant] got, I think, mostly upset with you.  But she was pretty irate by the time we got
to the punishment hearing.  She doesn’t
lose control very often, but she was losing control.  And I felt she would be a detriment if she
testified again, and she pretty much concurred with that.

 

                [District
Attorney]:              So it was a mutual
decision that she not testify?

 

                [Counsel]:                             That’s correct.

 

                [District
Attorney]:              But she knew she
had the right to testify?

 

                [Counsel]:                             Sure.

 

                [District
Attorney]:              And you did not
fail to call her when she was wanting to testify?

 

                [Counsel]:                             That’s true.

 

            Appellant did not
expressly contradict this testimony.  She
said that she wanted to testify at the punishment phase and that her attorney
told her she could.  She never said that
her attorney prevented her from testifying. 


            A criminal defendant is
the  “ultimate authority” as to whether
she testifies or not.  Florida v.
Nixon, 543 U.S. 175, 187, 125 S. Ct. 551, 560, 160 L. Ed. 2d 565
(2004).  If counsel frustrates a
defendant’s right to testify, we evaluate that error under the ineffective
assistance of counsel framework.  Johnson
v. State, 169 S.W.3d 223, 228 (Tex. Crim. App. 2005).  On the basis of the testimony, the trial
court could have reasonably concluded that Appellant joined the decision not to
testify.  If Appellant joined the
decision not to testify, that ends our inquiry. 


            There was no basis for
the trial court to conclude that Appellant’s counsel prevented her from
testifying.  The strategic decision not
to present Appellant’s testimony was reasonable.  The trial court had seen a videotape of
Appellant’s interview with the police in which she was abusive to the officers
investigating her daughter’s death and also had the opportunity to view her
demeanor in the courtroom during trial. 
Therefore, the trial court’s decision to credit counsel’s testimony is
not without factual basis.  Furthermore,
counsel testified that by not presenting testimony from Appellant, he was able
to keep the jury from hearing about her substantial misconduct since the death
of her daughter, including the fact that Appellant and Johnny had set up a
methamphetamine manufacturing lab in a shed behind her father’s residence
shortly after Candice’s death. 
Additionally, Appellant had been charged with the delivery of
methamphetamine during the interim between Candice’s death and her arrest for
the murder. During a CPS hearing prior to trial, Appellant had admitted under
oath that she had delivered methamphetamine to a police officer, and she had
been charged with that offense.  None of
this evidence was admitted in the punishment phase of the trial, and it was
counsel’s belief that it would have been admitted had she testified.  If, however, the court found that Appellant
simply acceded to counsel’s decision that she not testify, counsel’s decision
not to present Appellant’s testimony, along with the other suggested evidence
is not outside the scope of reasonable assistance of counsel and does not cause
us to conclude that there is a reasonable probability that the result of the
proceeding would have been different.          

            At the motion for new
trial, Appellant argued that her attorney should have presented as punishment
evidence that she had been sexually assaulted by an uncle and a carnival worker
as a child, that she had worked in a restaurant, that she had a difficult life,
and that she had gone to community college. 


            This case involved the
intentional murder of Appellant’s teenage daughter.  The jury concluded, despite her testimony, that
Appellant either held Candice’s arm while Johnny injected her with a needle
full of methamphetamine or that Appellant injected her daughter herself.  The jury could have concluded that the murder
took place after a prolonged physical fight during which Candice was beaten and
that Johnny and Appellant murdered Candice because she had been sleeping with
Johnny or because she was going to tell the authorities about their drug
dealing. 

            In that context, the
fact that Appellant had worked in a restaurant, had a difficult life, or had
gone to community college was unlikely to tip the scale.  It is a closer question with respect to the
sexual assault.  The court of criminal
appeals recently granted habeas corpus relief to an applicant whose attorney
had failed to uncover evidence that he had been sexually assaulted, holding
that the evidence could have mitigated his punishment.  See Ex parte Gonzales,
204 S.W.3d 391 (Tex. Crim. App. 2006).

            This case is different
from Gonzales in three important ways.  First, counsel was aware, at least to some
extent, of the sexual assault.  This was
not a case, like Gonzales, where substantial evidence was
developed after trial that had not been presented at trial.  Second, there is no finding, as there was in Gonzales,
that the assault actually occurred. 
Finally, there was no evidence, as there was in Gonzales,
linking the sexual assault to other problems the defendant suffered as a result
of the assault. 

            The trial court may not
have believed Appellant’s testimony at the motion for new trial hearing that
she had been sexually assaulted.  Because
Appellant was the only person who testified about the childhood abuse, we
cannot conclude that she could have attempted to prove it other than by testifying
herself.  Counsel decided not to present
Appellant’s testimony because he was worried that she would lose control.  He also feared that the State would be able
to ask Appellant about her substantial misconduct since Candice’s death.  In this context, it was reasonable for
counsel to conclude that putting Appellant on the stand, even if her testimony
included her allegation that she had been sexually assaulted, was not worth the
risk of her breaking down on the stand or the risk that evidence of her
substantial misconduct since her daughter’s overdose death would be placed
before the jury.[3]

            Finally, Appellant
complains that counsel relied upon the subpoena of the State and did not secure
the testimony of Appellant’s other daughter at the punishment hearing.[4]  There is no evidence as to what the daughter’s
testimony would have been.  The other
daughter did not testify at the motion for new trial hearing, and we cannot
conclude that it was deficient performance not to call her as a witness without
some notion of what her testimony would have been.  See Wilkerson v. State,
726 S.W.2d 542, 551 (Tex. Crim. App. 1986); Tutt v. State, 940
S.W.2d 114, 121 (Tex. App.–Tyler 1996, pet. ref’d).

            In conclusion, the trial
court could have found that Appellant agreed with the strategy not to seek a
severance of her case from Johnny’s and agreed with the decision not to
testify.  It was a reasonable strategy
not to present punishment evidence, especially when it risked exposing further
negative facts, and when the bulk of the proposed evidence was of slight
mitigation value.  It was a reasonable
strategy to go to trial with Johnny, and to present Appellant as being either
less culpable than Johnny or less of a bad person.  Appellant did not receive ineffective
assistance of counsel.  We overrule
Appellant’s first and seventh issues.

 

Sufficiency of
the Evidence

            In her second, third,
fourth, and fifth issues, Appellant argues that the evidence is insufficient to
support her conviction.  Specifically,
Appellant argues that the trial court should have granted her motion for a
directed verdict at the close of the State’s case, that the accomplice
testimony was not corroborated, and that the evidence was legally and factually
insufficient to support her conviction.

Standards of Review

            The due process
guarantee of the Fourteenth Amendment requires that a conviction be supported
by legally sufficient evidence.  See
Jackson v. Virginia, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87,
61 L. Ed. 2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.
Crim. App. 2004); Willis v. State, 192 S.W.3d 585, 592 (Tex. App.–Tyler
2006, pet. ref’d).  Evidence is not legally
sufficient if, when viewing the evidence in a light most favorable to the
verdict, no rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; see also Johnson
v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

            While legal sufficiency
review is all that is required by the U.S. Constitution, the Texas Court of
Criminal Appeals has determined that the Texas Constitution requires further
review of the factual sufficiency of the evidence.  Clewis v. State, 922 S.W.2d
126, 129–30 (Tex. Crim. App. 1996).  We
review the factual sufficiency of the evidence without the light most favorable
to the verdict, and we determine whether the evidence supporting the verdict is
so obviously weak as to undermine our confidence in the jury’s determination,
or the proof of guilt, although adequate if taken alone, is greatly outweighed
by contrary proof.  Johnson v.
State, 23, S.W.3d 1, 11 (Tex. Crim. App. 2000); see also Watson
v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006) (Evidence is
factually insufficient only when reviewing court objectively concludes that the
great weight and preponderance of the evidence contradicts the jury’s
verdict.).

            Under either standard,
our role is that of appellate review, and the fact finder is the sole judge of
the weight and credibility of a witness’s testimony.  Wesbrook v. State, 29 S.W.3d 103, 111–12
(Tex. Crim. App. 2000).  The fact finder
may choose to believe all, some, or none of a witness’s testimony.  Sharp v. State, 707 S.W.2d 611,
614 (Tex. Crim. App. 1986).

            The sufficiency of the
evidence is measured against the offense as defined by a hypothetically correct
jury charge.  See Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
A hypothetically correct jury charge “accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State’s
burden of proof or unnecessarily restrict the State’s theories of liability,
and adequately describes the particular offense for which the defendant is
tried.”  Id.

            As alleged in the
amended indictment, the State was required to prove that Appellant
intentionally or knowingly committed an act clearly dangerous to human life by
injecting Candice Alexander with an excessive amount of methamphetamine,
causing the death of Candice Alexander, that she did so in the course of
committing the felony offense of delivery of methamphetamine to a minor, and
that the death was caused in the course of and in furtherance of the commission
of the felony.  See Tex. Pen. Code Ann. §§ 19.02 (b)(2),
(3) (Vernon 2006).  A deadly weapon is a
firearm or anything manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury, or anything that in the manner of
its use or intended use is capable of causing death or serious bodily
injury.  Tex. Pen. Code Ann. § 1.07(a)(17) (Vernon 2006).

            A challenge to the
denial of a motion for instructed verdict is a challenge to the legal
sufficiency of the evidence.  McDuff
v. State, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997); Cook v.
State, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993).  We consider all of the evidence for purposes
of this review.  Cook, 858
S.W.2d at 470.  

            A conviction may not be
sustained on the testimony of an accomplice unless there is other evidence “tending
to connect a defendant to the offense committed.”  Tex.
Code Crim. Proc. Ann. 38.14 (Vernon 2006); Simpson v. State,
181 S.W.3d 743, 753 (Tex. App.–Tyler 2005, pet. ref’d).  The corroborating evidence need not directly
connect the defendant to the crime or be sufficient by itself to establish
guilt, but it must do more than merely show the commission of the offense.  Tex.
Code Crim. Proc. Ann. 38.14.  The
corroboration requirement is fulfilled if the combined weight of the
nonaccomplice evidence tends to connect the defendant to the offense.  Cathey v. State, 992 S.W.2d
460, 462 (Tex. Crim. App. 1999).  The
corroborating evidence may consist of circumstantial evidence.  Gosch v. State, 829 S.W.2d 775,
777 (Tex. Crim. App. 1991).  

            To evaluate whether
there is sufficient corroborating evidence, we eliminate the accomplice
testimony from our consideration and examine the record to ascertain whether
the remaining evidence tends to connect the defendant with the offense.  McDuff v. State, 939 S.W.2d
607, 612 (Tex. Crim. App. 1997).  The
accomplice witness rule is a statutorily imposed sufficiency review and is not
derived from federal or state constitutional principles that are the basis for
the legal and factual sufficiency standards. 
Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App.
2002).

Analysis–Identity

            Appellant first argues
that the trial court should have granted a directed verdict because she was not
identified by any of the witnesses during the trial.  The State disagrees, pointing to one witness
who identified Appellant, and argues that identity was not an issue in this
case.  A defendant is not required to
specifically contest an issue beyond a plea of not guilty to require the State
to prove every element of an offense. 
There was, however, evidence of identity in this case.  One witness identified Appellant, and a
videotape of Appellant’s statement to the police was played[5] for the
jury.          The
court of criminal appeals has held that in cases where an in–court
identification is incomplete, a reviewing court need not presume that the jury
chose “wilfully to convict [Appellant] without evidence” that she was the
perpetrator of the offense.  See Rohlfing
v. State, 612 S.W.2d 598, 601 (Tex. Crim. App. 1981).  To resolve this matter, however, we need not
rely on a presumption.  Our review
encompasses the entire trial, including Appellant’s case in chief.  See Cook, 858 S.W.2d at
470.  Appellant testified during her case
in chief and identified herself. 
Although she disputed some of the statements and actions attributed to
her, it is clear that she was the same Rebecca Lee that the other witnesses
referred to during their testimony.  The
evidence was legally sufficient to prove that the Rebecca Lee named in the
indictment and to whom the witnesses referred was the same Rebecca Lee who was
on trial.

Analysis–Corroboration of Accomplice Testimony

            Elton Reece was also
charged with Candice’s murder and therefore was an accomplice as a matter of
law.  See Burns v. State,
703 S.W.2d 649, 651 (Tex. Crim. App. 1985). 
He testified that he was present in the home when Candice was
killed.  Reece testified that there was a
commotion in a bedroom in Appellant’s home, that Candice ran out of the room,
out of the trailer, and tried to hide under a truck outside the house.  Reece testified that Johnny pulled her out
from under the truck and took her back inside. 
Appellant and Johnny took Candice to a back room.  Reece testified that Johnny and Appellant
emerged a short time later and said Candice was dead.  

            Setting aside Reece’s
testimony, there is substantial evidence that links Appellant to the
murder.  First, the cause of her death
was an overdose of methamphetamine, and Appellant told at least two witnesses
that she and Johnny had injected Candice with drugs.  There was also testimony that Appellant had
complained that Candice was going to tell the authorities about the family’s
involvement in the drug trade and that Candice had been getting her own
methamphetamine and not sharing the drugs with the rest of the family.  Second, another witness testified that
Appellant told her that Candice had died of a methamphetamine overdose and, at
the funeral service for Candice, told her to look at Candice’s arm.  This was before the toxicology report was
available concluding that Candice died of an overdose of methamphetamine.  Finally, while denying killing her daughter,
Appellant testified that she was present in the home before Candice died and
that she was present when the body was found. 
The evidence other than Reece’s testimony is sufficient to link
Appellant to the murder.

Analysis–Legal and Factual Sufficiency

            With respect to the
legal sufficiency of the evidence, Appellant argues only that it was not proven
that she was the same Rebecca Lee who was indicted.  We have previously considered this  argument and hold that there was sufficient
evidence, including Appellant’s testimony, to prove that she was the Rebecca
Lee referred to in the indictment and to whom the witnesses were referring when
they testified.  

            Appellant argues that
the evidence is factually insufficient to support the verdict.  Specifically she argues that another of
Appellant’s daughters was present in the trailer and would have awoken had the
assault happened the way Reece testified, and that the evidence was
insufficient to overcome Appellant’s testimony that she was asleep when Candice
was murdered.  This is primarily an
argument about the weight to be given to Reece’s and Appellant’s
testimony.  The jury determines the
weight to be given the testimony and is the arbiter of credibility.  Wesbrook, 29 S.W.3d at 111–12.  The jury’s decision to credit Reece’s
testimony and not Appellant’s is not unreasonable.  The testimony of Elton Reece and the medical
examiner, if believed, is sufficient to support the verdict.  When we consider this testimony along with
Appellant’s statements to other witnesses about her actions and the remainder
of the evidence, we conclude that the evidence that supports the verdict is
neither inadequate, standing alone, to support the verdict; nor is it
outweighed by the great weight and preponderance of the evidence.  We overrule Appellant’s second, third,
fourth, and fifth issues.

Jury
Instructions

            In her sixth issue,
Appellant contends that the trial court erred when it declined to give several
jury instructions she requested.  The
instructions requested by Appellant would have invited the jury to examine the
testimony of drug addicts, informants, and those testifying under immunity from
prosecution with “greater care” or “greater care and caution” than the
testimony of an ordinary witness.[6] 


            A trial court is
required to instruct the jury on the “law applicable to the case,” and it is
error for a trial court to refuse to do so. 
Tex. Code Crim. Proc. Ann.
art. 36.14 (Vernon 2006); Huizar v. State, 12 S.W.3d 479, 484
(Tex. Crim. App. 2000).  Appellant has
cited no Texas authority—other than a bare citation to several sections of
article I of the Texas Constitution—for the type of instructions she requested
and asserts, again without citation, that these instructions are derived from
jury instructions used in the federal courts in the Fifth Circuit.  See, e.g., United States
v. Abrego, 141 F.3d 142, 153 (5th Cir. 1998).  Although not precisely denominated as such,
we will construe this argument as a good faith argument for an extension,
modification, or reversal of existing law. 

            Existing law forbids the
instruction Appellant sought.  The court
of criminal appeals has acknowledged that “[i]t has long been held that it is
reversible error for the trial court to give instructions that refer to the credibility
of the witnesses.”  Russell v.
State, 749 S.W.2d 77, 78 (Tex. Crim. App. 1988).  We have held that a credibility instruction
need not be given when a child witness testifies, Norman v. State,
862 S.W.2d 621, 628 (Tex. App.–Tyler 1993, pet. denied), and several courts of
appeals have considered instructions similar to those proposed here and held
that a trial court need not give them.  See
Reyes v. State, 694 S.W.2d 556, 566–67 (Tex. App.–Corpus Christi
1985), reformed on other grounds and aff’d, 741 S.W.2d 414 (Tex. Crim.
App. 1987); Conway v. State, 740 S.W.2d 559, 562 (Tex. App.–Beaumont
1987, pet. ref’d).  

            In Slaughter v.
State, 809 S.W.2d 949, 951–52 (Tex. App.–Beaumont 1991, no pet.), the
court of appeals traced the law regarding jury instructions relating to the
credibility of witnesses back more than one hundred years and concluded that
such instructions were improper and contrary to Texas law.  The court in Slaughter noted
that, by statute, the jury is the exclusive judge of the weight to be given to
testimony and the trial court is forbidden to express an opinion on the weight
of the evidence.  Id.
(citing Tex. Code Crim. Proc. Ann.
arts. 38.04, 36.14).  The instructions
requested by Appellant cannot be given because they are a form of comment on
the weight of a witness’s testimony.  Id.
(quoting Muely v. State, 31 Tex. Crim. 155, 19 S.W. 915 (1892) (“The
jury are the exclusive judges of the weight of the testimony and the
credibility of the witnesses, and no interference by the court with the
prerogative of the jury in these respects can be allowed.”)); see also Russell,
749 S.W.2d at 78 (“Certainly a comment on the weight of the evidence occurs
when the judge appraises the credibility of a particular witness.  Thus when a judge, in his charge to the jury,
suggests that certain evidence is true or is untrue, that is a comment on the
weight of the evidence.”).

            Appellant argues that
reversible error occurred because the jury was not informed to be skeptical of
the testimony of drug addicts, those she has called “informants,” and those who
had criminal cases pending.  Appellant’s
argument does not persuade us to depart from established precedent.  The crucible of cross examination burns hot
enough to allow sufficient probing of a witness who may use drugs, if the
evidence is admissible, or who is facing criminal charges.  We are not persuaded, even if Texas law
allowed it, that a jury needs to be specifically reminded to be skeptical of
the testimony of witnesses with these issues. 
Nor are we persuaded that the Texas or the U.S. constitutions require
such instructions.  It has long been the
law in Texas that the trial court may not make a comment on the weight of the
evidence.  This conclusion is rooted in
our desire that factual determinations in criminal cases, including assessments
of credibility, be made by jurors with as little judicial  interference as possible.  The trial court’s responsibility to read the
law to the jury does not include offering suggestions about how to assess
credibility.  We overrule Appellant’s
sixth issue.

Disposition

            We affirm
the judgment of the trial court.

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

Opinion delivered February 9, 2007.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)

 

 

 

 

 











[1] See Tex. R. App. P.
21.8(b) (“In ruling on the motion for new trial, the court must not summarize,
discuss, or comment on evidence.”).





[2] Counsel said that “Johnny
Lee and Rebecca Lee have done a lousy job of getting their stories straight
because some of the things that she said hurt him; some of the things that he
said hurt her.”  This statement seems to
be an internecine attack, but is actually a suggestion that the defendants were
not lying or they would have made up a 

Footnote continued.

 

better
story.





[3] Counsel had apparently factored the risk of Appellant’s misconduct
coming into the trial when he initially decided that Appellant should
testify.  He was more concerned about her
losing control on the witness stand.  So
long as she did not object, either of these considerations would have supported
his decision not to present Appellant’s testimony.





[4] Counsel was entitled to rely on the State’s subpoena, and if the State’s
subpoena had been served, the clerk was not permitted to issue another subpoena.  See Tex.
Code Crim. Proc. Ann. art. 24.03(a) (Vernon 2006). 





[5] We do not doubt that the videotape was persuasive evidence of identity,
but on appeal we cannot compare an image on the videotape to the person at
trial because we were not present at trial.





[6] As required by law, the trial court instructed the jury that Elton
Reece was an accomplice and that if an offense was committed, the jury could
not consider Reece’s testimony unless it found his testimony to be true and
corroborated by other evidence tending to connect Appellant to the charged
offense.  See Herron v. State,
86 S.W.3d 621, 631–32 (Tex. Crim. App. 2002).