JOHN LEWELLEN v. THE STATE.

No. 6406. Decided January 18, 1922.

1.—Murder—Self-Defense—Charge of Court—Apparent Danger—Actual Danger.

Where, upon trial of murder, the court's charge on self-defense was criticised because it limited the right of self-defense to an actual attack, and that the theory of apparent danger should have been submitted, but it appeared from the testimony that the deceased with the threat upon his lips and the butcher knife in his hand was advancing upon the defendant in a menacing attitude in striking distance at the time the shot was fired, there was no reversible error.

2.—Same—Self-Defense—Apparent Danger—Rule Stated—Charge of Court.

The principle of apparent danger as applied to the law of self-defense is that one who does an act under a reasonable apprehension of the loss of life or serious bodily harm, founded on the movements of his adversary is not to be held culpable because it may afterwards appear that there was no actual danger; but in the instant case, where the demonstration by the deceased had passed the point of preparation, there was no error in the court's charge on self-defense. Following Simmons v. State, 55 Texas Crim. Rep. 448.

**3.—Same—Provoking Difficulty—Charge of Court.**

Where, upon trial of murder, the evidence raised the issue of provoking the difficulty, there was no error in the court's action to submit a charge on the law of provoking the difficulty.

**4.—Same—Imperfect Self-Defense—Charge of Court.**

Upon trial of murder, the evidence did not raise the issue which rendered it incumbent upon the court to instruct upon the law of imperfect self-defense, on the theory that in provoking the difficulty the defendant's intent was not to kill but to do the deceased some lesser injury, as there was no evidence suggesting such issues.

**5.—Same—Provoking Difficulty—Converse Proposition—Weight of Evidence.**

On trial of murder the court should properly have submitted in his charge on the converse proposition of provoking the difficulty a charge which would obviate the objection that it was on the weight of the evidence.

**6.—Same—Presumption—Instrument Used—Charge of Court.**

In Article 1106, P. C., it is provided that where a homicide takes place to prevent murder, if the weapons used by the party making the attempt are such as would have been calculated to produce that result, it is presumed that the person so using them designed to inflict injury, and where the evidence raised this issue, the court's failure to charge on this presumption was reversible error.

**7.—Same—Intent to Kill—Presumption of Law—Question of Fact.**

In measuring the rights of an accused who defends against such an attack, the law presumes that his assailant intended to kill him, and the intent of the assailing party is not a question of fact for the jury, and when the jury determines that the proof establishes the fact that he was making the attack, using the weapon described, the presumption of law is that his intent was to kill. Following Clark v. State, 56 Texas Crim. Rep., 295, and other cases.

**8.—Same — Presumption — Self-Defense — Charge of Court — Statutes Contrued.**

The obligation to give the charge, under Article 1106, supra, is not met by the charge ordinarily given, on the issue of self-defense. This article is a definite element in the law of self-defense where the facts bring the case within the purview of this statute, its substance should be charged. Distinguishing Alexander v. State, 63 Texas Crim. Rep., 103, and other cases.

**9.—Same—Stranger Witness—Charge of Court—Evidence.**

Where the defendant's witness was a citizen of the county of the prosecution, and the case did not come under the rule of the theory that he was a stranger to the jury, etc., there was no error in refusing to receive such testimony. Following Warren v. State, 51 Texas Crim. Rep., 599, and other cases.

**10.—Same—Relative Strength of Parties—Charge of Court.**

Where the circumstances of the homicide are not such as to call for a charge on the relative strength of the parties, there was no reversible error. Following Brady v. State, 65 Texas Crim. Rep., 521, and other cases.

**11.—Same—Misconduct of Jury—Practice on Appeal—Argument of Counsel.**

Where the judgment is reversed and the cause remanded for other reasons, it is not required in the instant case to pass upon the misconduct of the jury of receiving outside evidence or upon the argument of state's counsel.

Appeal from the District Court of Bell. Tried below before the Honorable M. B. Blair.

Appeal from a conviction of murder; penalty, 99 years imprisonment in the penitentiary.

The opinion states the case.

*DeWitt Bowmer* and *W. W. Hair,* for appellant.—On question of apparent danger: Singleton v. State, 216 S. W. Rep., 1094; Bennett v. State, 194 id., 148; Hoyt v. State, 228 id., 936.

On question of provoking difficulty: Burkhardt v. State, 202 S. W. Rep., 513; Carter v. State, 220 id., 335.

On question of weapon used and presumption of injury: McMitchell v. State, 93 S. W., Rep., 723; Duke v. State, 120 id., 894; Williams v. State, 144 id., 620; Castle v. State, 209 id., 416.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—The conviction is for murder; punishment fixed at confinement in the penitentiary for a period of ninety-nine years.

The homicide took place in the city of Temple, Bell County, Texas. Appellant was a resident of that county. He was awaiting repairs on his automobile and intended to go to Rockdale, in Milam County. He fell in with three acquaintances: Caldwell, Joyce and Lanham, and they went together into the establishment of the deceased.

What occurred, as related by the State's witnesses, is, in substance, this: Chudey, an employee of the deceased, was in the building. He saw the appellant, Homer Joyce, and another enter, and soon after they entered, he heard Homer Joyce use the word "s-n-of-a-b—h." Sandwiches were ordered, and while Chudej was preparing them, the deceased was present, and after the word "s-n-of-a-b—h" had been used several times, the deceased, looking at the appellant and Homer Joyce, said: "You are not going to call anybody a s-n-of-a-b—h in this place, whereupon the appellant said: "You are a s-n-of-a-b—h," to which Zurovec replied: "I am not a s-n-of-a-b—h, if I am, what are you, one too?" Appellant reached for the glasses which were near the coffee urn, but Zurovec got them and set them back out of his reach. Appellant then turned and said: "I guess I will take a leak before that man leaps on me" and started towards the front door, when he was told by the witness that there was a toilet in the back end of the building; that about a minute and a half he returned, drew a pistol and said: "Who said I was a s-n-of-a-b—h" and shot at Zurovec.

About the same time that the firing began, Joyce threw a mustard glass at Zurovec. The deceased made no demonstration and did not have any knife or other weapon in his hand at the time the firing began. He fell a short distance out of the building. Two wounds were inflicted upon him, one shot passing throught the left arm; the other

entered near the spinal column and passed through the body, coming out near the right nipple.

Appellant's version was that on entering the building, in talking to Homer Joyce, he used the word "s-n-of-a-b—h," referring to the automobile which he was having repaired and which was giving him trouble; that the deceased approached appellant and accused him of calling the deceased a s-n-of-a-b—h and ordered him out of the building. Appellant denied that in using the term he referred to the deceased, but the deceased, having a knife in his hand, persisted in ordering him out and remarked: "If you don't get out, I will show you." Appellant reached for the glass which was sitting on the counter, but the deceased got it, and the appellant left because he was ordered out.

At the time of appellant's departure, Will Lanham, Luther Caldwell, and Homer Joyce, and two other men remained in the building. Appellant had no pistol at the time but went to the premises of Harry Shanklin and took possession of Shanklin's pistol, with the intention of going to Rockdale and with no intention of having further trouble with the deceased. Appellant, however, returned to the deceased's place of business to see whether his companions were ready to go. As he entered, he saw some one throw at the deceased, and the deceased said to him: "You called me a s-n-of-a-b—h," at the same time approaching. Appellant denied that he had done so, and the deceased repeated the accusation, saying: "Get out of here, you called me a s-n-of-a-b—h." Appellant said that "Then he ran at me with the butcher knife, and I pulled my gun and shot as quick as I could and as fast as I could."

The evidence is set out in greater detail in the companion case of Joyce v. State, 90 Texas Crim. Rep., 265, reported in 234 S. W. Rep., 896.

The court's charge on the law of self-defense is criticised because, as construed by the appellant, it limited his right of self-defense to an actual attack. Whether that is the correct construction of the charge may be debatable. Assuming that it was, however, it would not be error unless there was evidence upon which the theory that he acted upon apparent danger could be founded. In addition to the testimony of the appellant to which we have adverted, the witness Lanham, describing the occurrences taking place before the appellant left the premises, relates them in substantially the same manner as appellant. He describes them thus: "He (deceased) said, 'That is all right, get out,' and started between this opening that was there between the counters. At that time, he had a knife in his hand. Just as he said: 'Get out of here,' he drew the knife around in his hand, something like this (illustrating) and as he said that, he advanced toward the opening which was in the general direction of where John Lewellen was." "About the time that Zurovec was coming toward Lewellen with the drawn knife in his hand, Lewellen shot. The best I can remember,

there was two shots, and then something like a pause, and then three more, four or five shots altogether."

The witness, on cross-examination, said: "He had a big butcher knife in his hand, and it looked to me like he was fixing to jump on John Lewellen. Zurovec was coming through the opening between the counter down next to the front of the building. . . . The Bohemian had the knife in his hand at the time the shot was fired; he looked to be about the middle of this opening, coming kind of toward John Lewellen. I judge Lewellen was about four feet from Zurovec at the time the first shot was fired."

According to the State's testimony, the knife did not figure in the transaction at all. According to the testimony of the appellant and his supporting eyewitness, as we interpret it, the deceased, with the threat upon his lips and a butcher knife in his hand, was advancing upon the appellant in a menacing attitude, and was in striking distance at the time the shot was fired.

The principle underlying the doctrine of apparent danger, as applied to the law of self-defense, is that one who does an act under a reasonable apprehension of the loss of life or serious bodily harm, founded on the movements of his adversary, is not to be held culpable because it may afterwards appear that there was no actual danger. This evidence, it occurs to us, reveals a demonstration upon the part of the deceased passing the point of preparation for an attack and to present a real situation demanding action upon the part of the appellant for his own protection. This court, in a case holding that a charge on the law of apparent danger was not required, said:

"We do not understand that, in order that there should be an attack that it must be a completed attack; but it means such progress in the hostile demonstration and movement as to go beyond the mere acts of preparation and such as to demonstrate beyond doubt the beginning and evidence the progress of an actual hostile movement." (Simmons v. State, 55 Texas Crim. Rep., 448.) See, also, Ruling Case Law, vol. 13, p. 816.

If the conduct and words of the deceased were such as described by the appellant and his supporting witness, there was presented a situation which would not justify a reversal of the case upon the complaint made when considered in the light of the evidence and the charge that was actually given.

The charge on self-defense, in paragraph 13, in an abstract manner, stated the principles, using the following language:

"And it is not necessary that there should be actual danger, providing he acted upon a reasonable apprehension of danger as it appeared to him, viewed from his standpoint at the time."

In Paragraph 14 the jury is told that if they believe that at the time the shot was fired the "deceased was making or about to make an attack upon him, "or if they had a reasonable doubt thereof, which from the manner and character of it, caused him to have a reasonable

expectation or fear of death, or serious bodily injury, etc." See Goodwin v. State, 39 Texas Crim. Rep., 404; Simmons v. State, 55 Texas Crim. Rep., 448; Cavil v. State, 25 S. W. Rep., 628; Rodriquez v. State, 71 Texas Crim. Rep., 108, 158 S. W. Rep.; 537; Coker v. State, 22 Texas Crim. App., 20; Ellison v. State, .34 S. W. Rep., 945.

The evidence, in our opinion, justified the charge on the law of provoking the difficulty. It was appellant's theory that he fired to protect himself from an attack by the deceased. There is evidence that immediately before the attack, the appellant referred to the previous encounter in which insulting epithets had been exchanged and in which, according to appellant, he had been by the deceased ordered out of his house. If the deceased made the attack described by the appellant, the evidence justified the inference that it was brought about by the appellant's conduct and words. The things that took place in the house of the deceased a short time before the appellant returned thereto were available to the jury in interpreting the subsequent acts of the appellant. Evidence was not wanting, we think, to support the inference that the appellant, incensed by the first encounter, armed himself, returned to the premises which he had left upon the order of the deceased, and referred to the former altercation for the purpose of causing the deceased to attack him and with the intent when the attack was so made, to shoot and kill the deceased, and that at the time of the homicide, he acted in pursuance of this design. The soundness of this conclusion, we think, is illustrated in the decisions of this court. McGrew v. State, 49 S. W. Rep., 229; Bateson v. State, 46 Texas Crim. Rep., 46; Coleman v. State, 25 S. W. Rep., 772; Tardy v. State, 47 Texas Crim. Rep., 444; Cornelius v. State, 54 Texas Crim. Rep., 186; Barstado v. State, 48 Texas Crim. Rep., 255; Taylor v. State, 47 Texas Crim. Rep., 122; Bice v. State, 55 Texas Crim. Rep., 533.

We discern no evidence which rendered it incumbent upon the court to instruct upon the law of imperfect self-defense, on the theory that in provoking the difficulty the appellant's intent was not to kill but to do the deceased some lesser injury. If the jury believed that the appellant intentionally used means reasonably calculated to cause the deceased to attack him in order that he might use the attack thus provoked as an excuse for injuring the deceased, there is no evidence, so far as we are aware, which suggests that the injury he intended to inflict was other than serious bodily injury or death. The kind of weapon that he chose and the manner in which he used it apparently rebut any intent save that described. Keeton v. State, 59 Texas Crim. Rep., 316, 128 S. W. Rep., 413; Thumm v. State, 24 Texas Crim. App., 702.

The court, in submitting the converse of the State's theory in the charge on provoking the difficulty, after telling the jury the consequences of killing the deceased after appellant had intentionally and by suitable means provoked the difficulty, for the purpose of killing, uses the following expression:

90 T. C.—38

"Unless you believe from the evidence that the said John Lewellen did not intentionally seek and bring on the alleged difficulty with the intent to kill the said John Zurovec."

This is criticised on the weight of the evidence. Upon another trial, the charge should be so framed as to obviate this objection. It was doubtless the idea of the court to inform the jury that although the appellant may have used words or been guilty of conduct which provoked the difficulty, he would not forfeit his right of self-defense unless his words or acts were intended to bring on the difficulty in order that he might kill the deceased.

In Article 1106 of the Penal Code, it is provided that where a homicide takes place to prevent murder, if the weapons used by the party making the attempt are such as would have been calculated to produce that result, it is presumed that the person so using them designed to inflict the injury. A charge on this presumption was not embodied in the court's charge, and an exception to it was reserved upon that ground. We regard the complaint as well founded. As indicated hereinabove, the trial court treated appellant's testimony describing the attack by the deceased as using a "butcher knife." By other evidence in the case, the knife is described as one with a sharp point and with a blade about nine inches long. We understand the statute to be that where one is attacked by an assailant who uses in the attack a weapon calculated to produce death in the manner used, in measuring the right of an accused who defends against such an attack, the law presumes that his assailant intended to kill him. The intent of the assailing party is not a question of fact for the jury (Ward v. State, 30 Texas Crim. App., 687), but if the jury determines that the proof establishes the fact that he was making the attack using the weapon described, the presumption of law is that his intent was to kill. Clark v. State, 56 Texas Crim. Rep., 295. In a case where such an issue is presented, the duty upon the trial court to charge the substance of the statute mentioned appears imperative. McMichael v. State, 49 Texas Crim. Rep., 424; Clark v. State, 56 Texas Crim. Rep., 295. Many illustrations of this rule are found, where, as in the present case, the evidence disclosed an attack with the knife. Williams v. State, 65 Texas Crim. Rep., 437; Hudson v. State, 59 Texas Crim. Rep., 650; Cooper v. State, 48 Texas Crim. Rep., 36. The law fixes no arbitrary terms in which the instruction shall be given to the jury, but the obligation to give the charge is not met by the charge ordinarily given on the issue of self-defense. In all such cases, the accused defends against the attack or threatened attack, as viewed from his standpoint at the time. Article 1106, however, is a definite element in the law of self-defense, and where the facts bring the case within the purview of this statute, its substance should be charged. Suggestions to the contrary in Ward v. State, 70 Texas Crim. Rep., 393, 159 S. W. Rep., 272; Alexander v. State, 63 Texas Crim. Rep., 103; and some other cases are out of harmony with the statute and its construction by the

great weight of authority. We have recently had occasion to review various decisions of this court upon the subject in the case of Briscoe v. State, not yet reported. Under the evidence in the instant case, the trial court was not warranted in refusing, in response to appellant's exception, to amend his charge in the respect mentioned.

Lanham, an important witness for the appellant, was a stranger to the jury, and his testimony coincided with that of the appellant but conflicted with that of the state's witnesses. The theory of the state's counsel appears to have been that Lanham, was not, in fact, an eyewitness to the homicide, and in his cross-examination, the idea that this was the view of state's counsel was, by innuendo, made apparent. Predicate was laid for his impeachment, but no impeaching testimony was introduced. He appears to have been a citizen of the county in which the homicide took place, and .in which the trial was had. We do not regard the case to come under the rule that is asserted in Phillips v. State, 19 Texas. Crim. App., 158, where, under exceptional circumstances, the court received testimony supporting the character of the witness who was a stranger in the county. In the instant case, we think the court did not err in refusing to receive such testimony. The cases supporting Phillips v. State, *supra,* and distinguishing it are found in Rose's Notes on Texas Reports, vol. 5, pp. 483 and 484. The instant case, we think, comes within the purview of Warren v. State, 51 Texas. Crim. Rep., 599; Morrison v. State, 37 Texas Crim. Rep., 607; Murphy v. State, 40 S. W. Rep., 978.

The circumstances of the homicide are not such as to call for a charge on the relative strength of the parties. Vann v. State, 45 Texas Crim. Rep., 434; Ballard v. State, 71 Texas Crim. Rep., 587, 160 S. W. Rep., 619; Brady v. State, 65 Texas Crim. Rep., 521.

There is an assignment in the motion for new trial supported by evidence, upon the subject of receipt by the jury of evidence prejudical to the appellant during their retirement. The question is one upon which the law is well settled. See Gilbert v. State, 85 Texas Crim. Rep., 597; McDoughal v. State, 81 Texas Crim. Rep., 179; L. R. A., 1917-E, 930. Inasmuch as the question will not likely arise upon another trial, certainly not upon the same evidence, we deem it unnecessary to enter into an analysis of the testimony in order to determine whether the facts are such as to require a reversal upon that ground.

There were some intemperate arguments. On another trial, counsel, no doubt; will refrain from repeating them. We, therefore, pretermit any further comment on them.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*