BOB COLLINS v. THE STATE.

No. 7829.   Decided February 20, 1924.

Rehearing denied March 26, 1924.

**1.—Murder—Charge of Court—Self-Defense—Communicated Threats.**

Where, upon trial of murder, the testimony showed certain threats on the part of the deceased and an act evidencing an intention to execute such threats, the refusal of the trial judge to submit the law of self-defense based on such threats is reversible error. Following: Swain v. State, 86 S. W. Rep., 335, and other cases.

**2.—Same—Communicated Threats—Issue of Fact.**

The issue is for the jury under appropriate instructions, and the courts have been often cautioned not to trespass on the province of the jury but to submit same to them coupled with apt instructions to the effect that in determining the sufficiency of the act done to cause belief that the threat was about to be executed, the matter should be viewed from the standpoint of the defendant.

**3.—Same—Evidence—Specific Acts of Violence.**

The rule seems to be that testimony of specific acts of violence on the part of the deceased toward other persons is not admissible, unless it be shown that such facts were known to the accused at the time. Following: Patterson v. State, 56 S. W. Rep., 59, and other cases.

4.—Same—Practice on Appeal.

Matters occurring in the formation of the jury, the refusal of a continuance, the alleged misconduct of the jury, and viewing the scene of the difficulty, need not now be discussed.

5.—Same—Change of Venue.

Upon trial of murder there was no error in refusing an application for change of venue under the facts of the instant case.

6.—Same—Charge of Court—Temporary Insanity—Voluntary Recent Use of Liquor.

The jury should be told that temporary insanity resulting from the voluntary recent use of ardent spirits alone would not justify an acquittal, but insanity resulting from the recent voluntary use of ardent spirits coupled with cocaine might excuse one charged with the commission of a crime.

7.—Same—Rehearing—Charge of Court—Communicated Threats.

The statute confers upon the accused the right to testify in his own behalf and entitles him to have the jury determine whether his testimony given in support of any defensive theory is to be accepted or disregarded by them, and in the instant case the court should have charged on the law of communicated threats. Following: Hays. v. State, 90 Texas Crim. Rep., 199, and other cases.

Appeal from the District Court of Coleman. Tried below before the Honorable E. M. Critz.

Appeal from a conviction of murder; penalty, thirty-five years imprisonment in the penitentiary.

The opinion states the case.

*J. B. Dibrell, Jr.,* for appellant.—On question of communicated threats: Graves v. State, 124 S. W. Rep., 676; Lockhart v. State, 111 id., 1027; Winn v. State, 239 id., 947, and cases stated in opinion.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, and *Baker* and *Weatherred,* for the State.

LATTIMORE, JUDGE.—Appellant was convicted of murder, and his punishment fixed at thirty-five years in the penitentiary.

Appellant is a cripple, his back having been broken by the cave-in of a gravel bank in 1912, from which injury the lower part of his body was paralyzed and he appears to have suffered pain and inconvenience from the loss of the normal functions of various organs. Following his injury came a separation from his wife since which time he has been largely upon the charity of the county and of citizens of the town of Coleman. He had no home but for quite awhile prior to this homicide had been occupying a tent provided for him by charity. His frequent use of liquor coupled with cocaine and drugs is testified to, and its effect upon his mind and health appears in

97 T. C.—3.

the record. Deceased was a frequenter of appellant's tent and numerous incidents of their gambling, their losses and their differences also are in testimony. On the day of the homicide they together with others appear to have been out in the country from Coleman upon a trip in which both of them drank some whisky and appellant took cocaine twice. The defense in part was that he was irrational and irresponsible on said day, and a number of witnesses testified to that fact detailing actions of his upon which they based their conclusions, such as pointing his pistol at women, pitching his watch and chain to a bystander telling him he could have it, his language, demeanor and conduct at the time of and before and after the homicide. It is made to appear that deceased removed from appellant's pistol its magazine and that thereafter appellant demanded its return. Appellant while on the witness stand said that before they separated in the afternoon and before the killing he asked deceased again for the magazine of his pistol, and that deceased twisted his arm and cursed him and told him if he asked him for that magazine again he would kill him. Shortly before the killing appellant went by the home of Hon. Walter Woodward, an attorney of Coleman, for the purpose of consulting him but Mr. Woodward was away. Mrs. Woodward said that she knew appellant well and knew his voice but his voice sounded strange and she did not recognize him when he called. He wanted to talk to Mr. Woodward and said he was going to kill a man. When he left rolling in his wheel-chair toward town he was observed to go from one side of the walk to the other. When he reached the main street of Coleman he asked parties if they had seen Clabe May but observed May about this time sitting on some crates of soda water bottles and wheeled his chair toward him. Various witnesses testified that when appellant approached deceased some words were spoken and the shooting ensued. Appellant testified that he knew deceased to be a man of dangerous and violent disposition and character and that as he approached deceased he asked him again for the magazine to his pistol and that deceased laughed and said he did not have it and started to get up, and believing that deceased intended to carry out the threat to kill him, which had been made earlier in the evening, and being in the condition that he was by reason of the use of whisky and cocaine, and having an impression that his life was in danger at the hands of deceased whom he described as a desperate man like himself, he fired. Appellant testified that his mind at that time was in such condition that he had no clear recollection of what occurred, that it seemed like a haze to him and that it was all a matter of impression and belief. Other witnesses who saw the occurrence testified that at or about the time of the first shot, and they would not say it was not before, deceased was in the act of getting to his feet.

In this condition of the testimony appellant excepted to the failure and refusal of the learned trial judge to submit the law of self-defense based on threats and an act on the part of deceased evidencing an intention to execute such threat. Appellant also testified that once before deceased had threatened to jerk him out of his chair and stamp him on the sidewalk. It is well settled in this State that one accused of murder may defend on the ground of threats made by the deceased supported by proof that at the time of the homicide the deceased by some word or act or both indicated a present purpose to carry such threat or threats into execution. Swain v. State, 86 S. W. Rep., 335; Williams v. State, 87 Texas Crim. Rep., 280, 221 S. W. Rep., 287; Singleton v. State, 86 Texas Crim. Rep., 401, 216 S. W. Rep., 1094; Lewellen v. State, 90 Texas Crim. Rep., 588, 236 S. W. Rep., 987. When reliance upon such proposition finds support in the testimony, the issue is for the jury under appropriate instructions, and the courts have often been cautioned not to trespass on the province of the jury but to submit same to them coupled with apt instructions to the effect that in determining the sufficiency of the act done to cause belief that the threat was about to be executed,—the matter should be viewed from what the jury believe from all the evidence to be the standpoint of the accused at the time he committed the homicide. From the testimony of the sheriff who found a magazine in a position which indicates that deceased had it, which magazine fitted the pistol of appellant, it might be fairly inferred in fact that deceased did have the magazine to appellant's pistol at the time he was shot. If deceased threatened to kill appellant if he again asked him for it, and if appellant did ask him for it just prior to the homicide and deceased made any movement or did or said anything which was claimed by the defense to have caused or induced belief on the part of appellant that the threat made was about to be executed, it became the duty of the trial court to submit to the jury the law of the issue we have been discussing. As stated above, the charge of the court was excepted to for failure to submit this issue and a special charge presented containing substantially a correct statement of the law applicable to the facts in evidence, which was refused.

With reference to the rejection of testimony offered on behalf of appellant showing specific instances of violence on the part of deceased, toward other persons, the rule seems to be that such proof would not be admissible unless it be shown such facts were known to the accused at the time and might therefore have affected him in committing the homicide. Patterson v. State, 56 S. W. Rep., 59; Willis v. State, 49 Texas Crim. Rep., 142; Earles v. State, 52 Texas Crim. Rep., 146; Spangler v. State, 41 Texas Crim. Rep., 427.

Matters occurring in the formation of the jury and relating to the refusal of a continuance will not likely occur upon another trial, and

while same present interesting questions which have been examined at length, they will not be now discussed. In the same attitude is the alleged misconduct of the jury in viewing the scene of the difficulty and in conversing with persons other than those allowed by statute.

We perceive no error in the action of the court below in refusing a change of venue.

In instructing the jury as to temporary insanity resulting from the recent use of ardent spirits, in a case where there is evidence that the accused also used in conjunction with such spirits a drug like cocaine, and it is claimed that a condition of insanity resulted from the combined use of whisky and cocaine, we think care should be taken in the language used in the charge and the jury should be told that temporary insanity resuting from the voluntary recent use of ardent spirits alone, would not justify an acquittal. Edwards v. State, 38 Texas Crim. Rep., 386; Burton v. State, 46 Texas Crim. Rep., 495; Phillips v. State, 50 Texas Crim. Rep., 483; Moss v. State, 57 Texas Crim. Rep., 620. Insanity resulting from the recent voluntary use of ardent spirits coupled with cocaine, might excuse one charged with the commission of crime. In view of the reversal of the case for the errors mentioned, we do not discuss the sufficiency of the testimony.

The judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

March 26, 1924.

MORROW, PRESIDING JUDGE.—Consel for the prosecution insists that the evidence was not sufficient to demand an instruction to the jury on the law of communicated threats followed by some act done at the time of the homicide, showing an intention to execute the threat. Supporting this contention, lengthy quotations are taken from the testimony of the appellant. It is true that the appellant admitted or testified that his mind was more or less hazy touching the occurrences antecedent to and following the homicide. It did appear, however, that he testified that on an occasion, a short time previous to that upon which the homicide took place, when he had requested the deceased to return to him his pistol cylinder, that the deceased had roughly handled him and told him that if he made the same demand again, he would kill him. Appellant further testified that on the occasion of the homicide he did make the demand; that the de-

ceased made what appellant construed to be a hostile demonstration. He said:

"  .  .  .  and it appears to me like I asked him for my magazine and he said he didn't have it and kinder laughed and I asked him for it again, and he started to get up, and from then on I never recollected another thing until the next morning.  I had an impression of danger when he started to get up.  He had threatened to jerk me out of the chair once before, and stomp me on the sidewalk, and I felt that he was a desperate man just like myself and that he was liable to do it."

Appellant also testified to the general reputation of the deceased as a quarrelsome and dangerous man, especially when intoxicated, and stated many specific instances which had come to his knowledge that the deceased had been guilty of violence.  As indicated in the original opinion, the character of the deceased and the relations between them were reinforced by other testimony.  Considering what occurred at the time as detailed by the appellant in the light of the other testimony, we are constrained to the belief that the learned trial court was not warranted in refusing to give an instruction on the law of communicated threats.  The fact that the appellant may have given testimony which would have justified the jury in disbelieving his defensive theory, does not authorize the court to disregard it.  The statute confers upon the accused the right to testify in his own behalf and entitles him to have the jury determine whether his testimony given in support of any defensive theory is to be accepted or disregarded by them.  Art. 790, C. C. P.; Hays v. State, 90 Texas Crim. Rep., 199; Ross v. State, 53 Texas Crim. Rep., 295; Muely v. State, 31 Texas Crim. Rep., 155; Nowlin v. State, 76 Texas Crim. Rep., 480, 175 S. W. Rep., 1070.

The motion for rehearing is overruled.

*Overruled.*