MAURO GUAJARDO v. THE STATE.

No. 12201.   Delivered March 20, 1929.
Rehearing denied February 5, 1930.

The opinion states the case.

*J. F. Taulbee* of Georgetown, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, death.

Appellant filed a motion to quash the indictment in this case, making the contention that it did not follow the law. We think the indictment herein sufficiently charges murder under our present law. It is identical with the one upheld in Crutchfield v. State, 10 S. W. Rep. (2d) 119.

Certain exceptions were taken to the charge of the court, each of which has been analyzed and we believe none of same to possess merit. Another bill of exceptions was taken to the overruling of the motion for new trial, but since same only brought before the court errors of procedure during the trial, and contained no matter of supposed error otherwise, the bill brings nothing for review.

In his brief appellant's counsel urges fundamental error on the ground that the charge does not properly define malice aforethought,

and does not apply the law of malice aforethought to the facts. We have carefully examined all of the charges and are of the opinion that paragraph six of same does properly and sufficiently define malice aforethought, and that paragraph eight pointedly tells the jury that if they find and believe from the evidence beyond a reasonable doubt that the appellant killed the deceased, and that such killing was upon malice aforethought, as that term had been defined, they should find him guilty of murder and assess the penalty at death, or confinement in the penitentiary for any period of years not less than two. In the same paragraph the jury are further told that if they find and believe appellant killed deceased, not in self-defense, but do not further find that the killing was upon malice aforethought, as defined in this charge, they should find him guilty and fix his penalty at not less than two nor more than five years. This we believe to be a proper application of the law to the facts of this case, and if there be anything wrong with the definition of malice aforethought we are unable to detect the error. We are not disposed to agree with learned counsel for appellant that it should be first determined by the jury whether the killing was upon sudden passion arising from an adequate cause, and that the jury should be given a charge so stating, and instructing them that if they found the homicide to have been so committed, they should find the accused guilty of murder without malice aforethought. Such charge would but inject an added issue into this case, and all such cases. We now have for determination under appropriate definition and instructions but the single issue as to whether the killing was upon malice aforethought,—yes or no,—and if yes, then the heavier penalty; if no, then the lighter. If we followed the suggestion of counsel, we would shift back to the ground long familiar, i. e., was there cause, and if so, was it adequate, and if so did it in fact produce passion, and if so was it such as would lead a person of ordinary temper, under the same or similar circumstances, to kill? We do not believe such to be the intention of the present law. The fewer the issues, the less the likelihood of confusion and error. Malice aforethought is a term well understood and defined, and of comparatively easy comprehension. When, as is the command of our new murder statute, all evidences pertinent to the relations of the parties, their mental states and the issues involved, is before the jury, we do not think the court could single out any fact or set of facts and say to the jury that these mitigate, reduce or extenuate. Dunne v. State, 98 Texas Crim. Rep. 7, 263 S. W. Rep. 608.

We find little aid in the decisions rendered under the old law referring to extenuation or mitigation. The present statute sweeps these aside, makes all unlawful killing above the grade of negligent homicide, murder, and then runs through murder a well defined line or penalty marker, on the one side of which is all murder with malice aforethought, and on the other all murder without such malice. Manslaughter is no longer a defense against murder, nor are its constituents to be given in charge to the jury. Appellant has all his rights of self-defense unimpaired. His justification, if any, is in nowise rejected or limited. We appreciate the reasoning in appellant's brief, and have tried to analyze the authorities cited, but do not believe any error appears in the matters discussed.

We think it unnecessary to discuss the facts at any great length. For four years appellant had worked for and with the deceased, who had been good to him, according to appellant's own testimony. On the morning of the killing a difficulty arose and, according to the State's testimony, deceased struck appellant with his hand, defending against an attack or threatened attack from appellant with a wrench. Appellant went to his own house, washed, got a hat, put a pistol in his clothes, returned, worked a while, and at a time when, according to the wife of deceased, the latter was stooping over some part of a cultivator, appellant shot him. He seems to have emptied the pistol. Four bullet wounds, two of which would have been necessarily fatal, were in the body of the deceased. Appellant claimed self-defense, and that deceased threw a wrench at him, and believing his life in danger, he shot and killed the latter. Appellant got in the car of deceased immediately following the homicide and drove the same to Austin where he was arrested in it. The issues of fact were for the jury and they have solved them against appellant.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—From the appellant's testimony the following synopsis is made: He was born in Mexico; was 19 years of age; had lived in Texas for about seven years, the greater part of which time had been spent in Williamson County and four years in the service of the deceased. On the day of the homicide he was driving a cultivator drawn by two young mules. The deceased was painting his house and was on a scaffold. His movements

thereon frightened the mules and caused them to run away with the cultivator. It was stopped in a ditch near the road. The deceased became incensed, and grasping for a wrench and plow paddle, approached the appellant who, for his protection, seized the wrench and the plow paddle himself. The deceased then took the instruments away from the appellant, knocked him down and struck him in the face several times. While he was down, the wife of the deceased came and told him to let the appellant alone. The deceased entered the house and the appellant went to the hydrant to wash his face which was bloody. He then went to his house to get another hat, the one he was wearing having been destroyed in the encounter with the deceased. At the time of this encounter, deceased told the appellant he would kill him. He repeated this statement. After washing his face he, at the direction of the deceased, got the mules and put them in the lot. At the time he got his hat he also got a pistol from his house. At the direction of the deceased, the appellant went to where the cultivator was wrecked and assisted in extricating it, and came back to a point near the house of the deceased. The cultivator was drawn to the yard by the car of the deceased in which the appellant and deceased were both riding. The appellant claimed to have gotten his pistol for his protection, fearing serious injury or death at the hands of the deceased. The appellant was a small man, weighing about 105 pounds, and the deceased was a man of mature years, weighing about 125 pounds. When told by the deceased to get in the car with him, the appellant objected and made the excuse that he wanted to walk and pick up some single-trees that had been scattered in the run-away. However, he finally entered the car after getting the single-trees. The deceased then undertook to do some work on the cultivator, and while doing so, directed the appellant to bring the tools from the car which contained some wrenches and other appliances. Having no wrench with which to hold a bolt unto which the deceased was screwing a nut, he directed the appellant to hold it with his hands. The appellant made an unsuccessful attempt to do so, when the deceased threw a wrench at him, which he dodged, and was coming at him with another wrench in a striking attitude when the appellant fired, believing that that was his only chance to save his life.

The wife of the deceased saw but little of the first encounter and only a part of that in which the deceased was killed. In a general way, her testimony coincides with that of the appellant to the effect that he was plowing with a pair of young mules; that they became

frightened and ran away; that the appellant was assaulted by the deceased and was knocked down; that at her instance her husband ceased striking the appellant; that when released the appellant's face was bloody and he was directed by the witness to go and wash it, which he did. She was on the porch at her house and did not see the beginning of the shooting, but after hearing the first two shots she then saw the appellant shooting at the deceased.

The charge on self-defense is embraced in paragraphs 11 and 12 which are copied below:

"Every person has a right to defend himself against what reasonably appears to him to be an unlawful attack upon his person, and to use such means as to him may seem necessary to repel such attack; and a homicide committed under such circumstances is justifiable.

"A reasonable expectation of death or serious bodily injury will excuse a person in using all force as reasonably appears to him to be necessary to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonably apparent apprehension of danger as it appears to him from his standpoint at the time; and in such case a party acting under such real or apparent danger is in no way bound to retreat in order to avoid the necessity of killing his assailant, but may stand his ground and shoot and continue to shoot so long as such real or apparent danger continues to exist."

In no part of the charge is there given to the jury instructions relating to the application of the law of self-defense to the facts in evidence. The paragraphs are but abstract statements of law, leaving the jury without any guide as to its application. Therefore the charge does not meet the statutory demand that the court shall "deliver to the jury a written charge, distinctly setting forth the *law applicable to the case.*" Art. 568, C. C. P., 1925.

Paragraph 14 of the charge reads thus:

"You are further instructed, in connection with the law of self-defense, that if threats were made to the defendant by the said Arthur Bunnell to take the life of defendant or do him serious bodily injury, then defendant had the right, under the law, to arm himself and go into the presence of the said Arthur Bunnell on any lawful business or peaceful mission; and such conduct, if any, on the part of defendant would not in any manner abridge, affect or impair his right of self-defense; *and if, in so doing, the deceased assaulted the defendant in a manner calculated to carry out such threat, if any, to kill, or if you have a reasonable doubt thereof,*

*defendant's right of self-defense would not be abridged or impaired;
and if you so find, you will then determine the defendant's right of
self-defense without reference to the question of his going armed,
if he was on a lawful or peaceful mission."*

Art. 1258, P. C., reads in part as follows:

"Where a defendant accused of murder seeks to justify himself
on the ground of threats against his own life, he may be permitted
to introduce evidence of the threats made, but the same shall not be
regarded as affording a justification for the killing unless it be shown
that at the time of the homicide the person killed by some act then
done manifested an intention to execute the threat so made."

Appellant was entitled to an adequate charge on self-defense em-
bracing the subject of threats. He was also entitled, under the facts,
to an instruction touching the specific defense of threats as set forth
in Art. 1258, supra. See Collins v. State, 97 Tex. Cr. R. 31; Neal
v. State, 98 Tex. Cr. R. 468; Tillery v. State, 24 Tex. Cr. App. 251;
Vernon's Ann. Tex. P. C., 1925, Vol. 2, p. 496, subd. 6 and notes.
That compliance with this command of the statute is not met by
delivering to the jury an abstract statement of the law unaccom-
panied by the application of the law to the facts is made evident
by numerous declarations of the Supreme Court of this state and of
this court, many of which will be found collated in the case of
Edwards v. State, 96 Tex. Cr. R. 574, in reversing which the court
said:

"For the omission in the charge to apply the law to the facts of
the case the judgment must be reversed and the cause remanded."

Under the statute, the appellant had a right to act upon the appear-
ance of danger. If the jury believed that the deceased had threat-
ened to take the life of the appellant and that at the time he was
shot the deceased, by some act then done manifested the intention to
execute the threat so made, the statute (Art. 1258, supra), would
operate in behalf of the accused and entitled him to an instruction to
the jury in substance that if the deceased did some act at the time
which, viewed from the appellant's standpoint at that time, mani-
fested an intent to execute the threat, that he had a right to use force
in his own defense. It was not necessary that the act amount to an
assault; nor that the act, in the opinion of the jury, as viewed in the
light of the evidence upon the trial, manifested an intent to execute
the threat. The charge given was subject to the construction that
the appellant's right to act in his own defense was conditioned upon

the existence of a threat and an assault by the deceased with the intent to execute the threat.

The charge also made the right of the appellant to defend himself depend upon the jury's belief from the evidence upon the trial touching the necessity therefor instead of the finding of the jury that, as viewed by the appellant at the time, the necessity existed, that is, whether he acted upon a reasonable appearance of danger as it appeared to him at the time. See Swain v. State, 48 Tex. Cr. R. 98; Graves v. State, 58 Tex. Cr. R. 42; Clark v. State, 51 Tex. Cr. R. 519; Lockhart v. State, 53 Tex. Cr. R. 589; Knight v. State, 55 Tex. Cr. R. 243; Collins v. State, 88 Tex. Cr. R. 358; Jones v. State, 89 Tex. Cr. R. 577.

Under the issues raised by the evidence the errors in the charge to which reference has been made cannot be regarded other than harmful. A new trial should have been ordered.

The motion for rehearing is granted, the order of affirmance is set aside, the judgment of the trial court is reversed and the cause remanded.

*Granted.*

ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—In our opinion reversing the judgment were discovered some immaterial inaccuracies. These have been corrected. From the motion for rehearing it appears that the purport of some language used has been misconstrued. This has been eliminated from the opinion.

We are impelled to adhere to the conclusion already expressed that the judgment must stand reversed because of the failure in the court's charge to make any application whatever of the law relating to self-defense. That such application was demanded is not open to debate. Edwards v. State, 96 Tex. Cr. R. 574, 259 S. W. 578; Francis v. State, 7 Tex. Cr. App. 501; Riojas v. State, 9 Tex. Cr. App. 95; Davis v. State, 10 Tex. Cr. R. 31; Reagan v. State, 84 Tex. Cr. R. 468, 208 S. W. 523. The omission was pointed out by timely written objection, which was not responded to by the court.

The state's motion for rehearing is overruled.

*Overruled.*